[L. A. No. 3140.    In Bank.—September 29, 1913.]

## S. R. SMITH, Respondent, v. UNION OIL COMPANY OF CALIFORNIA (a Corporation), Appellant.

MINING CLAIM—ENTRY FOR DISCOVERY OF OIL ON UNOCCUPIED PUBLIC LAND—RIGHT OF POSSESSION—DILIGENT PROSECUTION OF WORK OF DISCOVERY.—If a qualified person peaceably enters upon public lands of the United States for the purpose of discovering oil or other valuable mineral deposits therein, and such land is at the time unoccupied and there is no valid mineral location or lawful entry thereon, under the land laws of the United States, such person has the right to continue in possession so long as he continues to occupy the same to the exclusion of others, and diligently and in good faith prosecutes thereon the work of endeavoring to discover such mineral therein.

ID.—FIVE CLAIMS ACT—POSSESSORY RIGHTS TO CONTIGUOUS CLAIMS BEFORE DISCOVERY—OCCUPATION OF AND DISCOVERY WORK DONE ON ONE CLAIM.—Under the Act of Congress of February 12, 1903, commonly known as "The Five Claims Act," one who has acquired the possessory rights of locators before discovery to five contiguous claims taken up as oil-bearing lands, cannot preserve and maintain his inchoate right to each and all of them, without actual occupation of all, by means of a continuous actual occupation of one, coupled with the diligent prosecution in good faith of the work of discovery thereon, provided such work will also tend to determine the oil bearing character of the other claims, or of the particular one which may be in dispute.

ID.—ANNUAL ASSESSMENT LABOR—MEANING OF PHRASE—CONFINED TO WORK DONE AFTER DISCOVERY.—At the time of the passage of the so-called "Five Claims Act," the phrase "annual assessment labor," as used by miners and in mining law, had acquired a technical meaning, and was universally understood to mean the annual labor

required by section 2324 of the United States Revised Statutes in order to hold the right to the possession of a mining claim after a discovery and complete location had 'been made. It was never used or understood to indicate work done to make a discovery on a claim where none had been made.

Id.—Meaning of Phrase as Used in Five Claims Act—Act Only Applies to Contiguous Claims on Which Oil has Been Discovered.—That phrase, as used in the so-called "Five Claims Act," enacting that where "oil lands are located . . . as placer mining claims, the annual assessment labor upon such claims may be done upon any one of a group of claims lying contiguous and owned by the same person or corporation, not exceeding five claims in all: Provided, that said labor will tend to the development or to determine the oil bearing character of such contiguous claims," cannot be construed to include or refer to work done upon a claim to accomplish a discovery thereon in order to perfect the location. The use of the phrase limits the application of the act to claims upon which a discovery has been made, claims upon which there has been a valid and completed location.

Id.—Construction of Proviso of Act.—The act cannot be construed to refer to claims upon which a discovery has not been made, because of the clause in the proviso declaring that labor upon one claim will be sufficient to preserve the right to the contiguous claims, if it will tend to determine its "oil bearing character."

Id.—Construction of Unambiguous Statute.—Where the words of a statute are not ambiguous and their effect is not absurd, the court cannot give it other than its plain meaning, although it may appear probable that a different object was in the mind of the legislature.

Agency—Admissions of Special Agent.—One employed for a special and temporary service has no authority to make admissions binding on his employer, except while actually engaged in the service and within the scope thereof.

APPEAL from a judgment of the Superior Court of Ventura County and from an order refusing a new trial. Robert M. Clarke, Judge.

The facts are stated in the opinion of the court.

Thos. O. Toland, Arthur H. Blanchard, and Don G. Bowker, for Appellant.

Alton M. Cates, for Respondent.

SHAW, J.—In this action the plaintiff and defendant make adverse claims to a certain parcel of land, each asserting a right of possession thereto as an oil land mineral location, under the acts of Congress provided for the disposition of the mineral lands belonging to the United States. The parcel is in the shape of a parallelogram, one mile from north to south and one-fourth of a mile from east to west, and contains one hundred and sixty acres. The plaintiff in his location calls it the "Schley" claim; the defendant located it as the "Rawley" claim. The court below gave judgment for plaintiff. The defendant appeals from said judgment and also from an order denying its motion for a new trial.

The plaintiff and seven other qualified persons posted the location notice, under which he claims, on the ground on February 5, 1910, the same being then unoccupied, and on the same day marked the boundaries by sufficient monuments. The location notice, which named the ground the "Schley" claim, was duly recorded in the county recorder's office and thereafter on March 8, 1910, the said seven other persons conveyed to Smith their interest in said land. Immediately upon marking the ground the locators took possession, and, with the exception of the period from August 31 to October 7, 1910, during which it was vacant, the ground has ever since been occupied, at first by the eight associates, and thereafter by the plaintiff and a lessee under him. On October 7, 1910, the lessee of plaintiff took possession and began work thereon preparatory for the drilling of a well thereon for the purpose of finding oil therein, which work he has diligently prosecuted. At the date of the beginning of this action, November 25, 1910, he had expended some two thousand dollars in said work. The action is, in form, an action under section 738 of the Code of Civil Procedure, to determine adverse claims.

If a qualified person peaceably enters upon public lands of the United States for the purpose of discovering oil or other valuable mineral deposits therein, and such land is at the time unoccupied and there is at the time no valid mineral location or lawful entry thereon, under the land laws of the United States, such person has the right to continue in possession so long as he continues to occupy the same to the exclusion of others, and diligently and in good faith prosecutes thereon

the work of endeavoring to discover such mineral therein. (*Miller* v. *Chrisman,* 140 Cal. 447, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444]; *McLemore* v. *Express Oil Co.,* 158 Cal. 562, [139 Am. St. Rep. 147, 112 Pac. 59]; *Weed* v. *Snook,* 144 Cal. 443, [77 Pac. 1023]; *Merced etc. Co.* v. *Patterson,* 153 Cal. 625, [96 Pac. 90]; s. c., 162 Cal. 358, [122 Pac. 950].) Hence, upon the facts stated, taken alone, the plaintiff would be entitled to maintain his possession.

The defendant claims the right of possession under a mineral land location of the same ground made by one Richard Gird and seven associates on March 5, 1883, designating it the "Rawley" claim. This location was regularly made and the ground was properly marked. By mesne conveyances the right and title of said locators became and now is vested in the defendant. No discovery of oil or other minerals has ever been made on said claim by either claimant, or at all. At the time the plaintiff located the ground as the Schley claim the defendant, although not then actually occupying this ground, was in the actual occupation of a contiguous claim of one hundred and sixty acres, known as the Sampson claim, upon which it was then and still is diligently drilling a well for the discovery of oil. This well is about one thousand feet west of the west line of the Rawley-Schley claim. It has expended several thousand dollars in this work. Including the Rawley claim, the defendant claims the right of possession of five contiguous claims,—namely, the Shenandoah, adjoining the north half of the Rawley on the west, the Sampson, adjoining the south half of the Rawley on the west, the Baltimore, adjoining the south end of the Rawley, and the Arizona, lying next west of the Baltimore and south of the Sampson. All these it held under locations regularly made in all respects save discovery. No discovery of oil had been made except on the Arizona, in which a well was bored and oil discovered in the year 1900. Evidence was given on the trial to the effect that the land embraced in these five claims showed indications of the presence of oil beneath the surface, and that the geological formation was such that the sinking of a well on the Sampson claim one thousand feet west of the Rawley mine would "tend to determine the oil bearing character of" the Rawley claim. By reason of these facts the defendant claims the exclusive right to the disputed territory,

under the act of Congress of February 12, 1903, known as "The Five Claims Act," [32 Stats. 825, U. S. Comp. Stats. Supp. 1911, p. 611]. This act, including the title, is as follows:

"An act defining what shall constitute and providing for assessments on oil mining claims.

"Be it enacted, etc. That where oil lands are located under the provisions of title thirty-two, chapter six, Revised Statutes of the United States, as placer mining claims, the annual assessment labor upon such claims may be done upon any one of a group of claims lying contiguous, and owned by the same person or corporation, not exceeding five claims in all; Provided, That said labor will tend to the development or to determine the oil bearing character of such contiguous claims."

The contention of the defendant is that under this act one who has acquired the possessory rights of locators before discovery to five contiguous claims taken up as oil bearing lands, may preserve and maintain his inchoate right to each and all of them, without actual occupation of all, by means of a continuous actual occupation of one, coupled with the diligent prosecution in good faith of the work of discovery thereon, provided such work will also tend to determine the oil bearing character of the other claims, or of the particular one which may be in dispute. For the reasons about to be stated, we have concluded that the act should not be thus construed.

Certain pre-existing provisions of the federal mining laws bear upon the proposition. Section 2320 of the United States Revised Statutes, [U. S. Comp. Stats. 1901, p. 1424, 5 Fed. Stats. Ann. 80], provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." The words "location" and "located," as here used, evidently mean and include the posting of a notice and the recording thereof, when required, and the marking of the boundaries, as required by section 2324, [U. S. Comp. Stats. 1901, p. 1426, 5 Fed. Stats. Ann. 19]. Section 2320, [U. S. Comp. Stats. 1901, p. 1424, 5 Fed. Stats. Ann. 80], on its face, applies only to claims for veins or lodes situated in rock in place, but by section 2329 it and all other provisions for the entry, location, and patent of vein or lode claims are made applicable also to placer mine claims. Oil

lands are to be taken up as placer claims. (29 U. S. Stats., .526, [U. S. Comp. Stats. 1901, 1434, 5 Fed. Stats. Ann. 47].) By the strict letter of the above passage from section 2320, it would appear that no one could maintain possession of a mining claim until he had discovered the mineral within its limits. It is true that in order to maintain his right of possession under the mining laws against another who has entered to make a mineral location in his absence, the claimant must prove a previous discovery as well as the previous marking of his lines. (*Miller* v. *Chrisman*, 140 Cal. 447, [98 Am. St. Rep. 63, 74 Pac. 444] ; *Uinta Co.* v. *Creede etc. Co.*, 196 U. S. 353, [49 L. Ed. 501, 25 Sup. Ct. Rep. 266].) But the act of February 27, 1865, now section 910 of the Revised Statutes, [U. S. Comp. Stats. 1901, p. 679, 5 Fed. Stats. Ann. 35], had declared that in possessory actions for public lands between persons not entitled thereto under the United States laws, the law of possession should govern, without regard to the paramount title of the United States. Accordingly, as before stated, it has been held that before a discovery an actual occupant diligently engaged in the work of discovery has the better right. But after discovery and location, continuous actual occupation was not required by any statute, in order to preserve the paramount legal right. In the course of years it transpired that, after discovery and complete location had been made, one person or corporation would acquire several such claims and allow them to lie idle and undeveloped. This was against the policy of the law, which was to encourage the working of mines and the extraction of precious metals therefrom. To prevent this it was provided in section 5 of the act of May 10, 1872 (17 U. S. Stats. 91), now section 2324 of the Revised Statutes, [U. S. Comp. Stats. 1901, p. 1426, 5 Fed. Stats. Ann. 19], that "on each claim located . . . and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year." If several claims were held by one person, or in common, work to the amount necessary to hold all of them could be done upon one, provided it tended to develop or benefit all the claims for mining purposes and was done in good faith. (*De Noon* v. *Morrison*, 83 Cal. 165, [23 Pac. 374] ; *Big Three etc. Co.* v. *Hamilton*, 157 Cal. 135, [137 Am. St. Rep. 118, 107 Pac. 301].)

It will be observed that neither the phrase, "annual assessment labor," nor the word "assessment," is used in section 2324. The annual work or improvement therein required is, however, referred to as "annual assessments," and the year during which it is to be done as the "assessment year" in the act of July 2, 1898, and in the title thereto the work is designated "assessment work." (30 U. S. Stats. 651, [U. S. Comp. Stats. 1901, p. 1428].) It is also referred to as "the annual assessment" in the act of November 3, 1893. (28 U. S. Stats. 6.) And long before the passage of these acts the phrases "assessment work," and "annual assessment," were in common use among miners, and in the decisions of the state and federal courts on mining law, to designate the annual labor required by section 2324. The word "assessment," when used in connection with the right to a mining claim, was universally understood to mean the annual labor required by. that section in order to hold the right to the possession of a mining claim after a discovery and complete location had been made. (1 Snyder on Mines, sec. 475.) It had acquired this technical meaning in mining law. It was never used or understood to indicate work done to make a discovery on a claim where none had been made. It was applied only to work done to hold a claim after discovery, work that had no necessary relation to a discovery, although, of course, such work might lead to further or more comprehensive discoveries.

This being the settled and uniform meaning of the word or phrase in that connection, it follows that the phrase "annual assessment labor," found in the act of 1903 under consideration, cannot be construed to include or refer to work done upon a claim to accomplish a discovery thereon in order to perfect the location. The use of that phrase limits the application of the act to claims upon which discovery has been made, claims upon which there has been a valid and completed location.

The defendant insists that the act must receive a construction favorable to it on this point, because of the clause in the proviso declaring that labor on one claim will be sufficient to preserve the right to the contiguous claim, if it will tend to determine its "oil bearing character." There is some force in the suggestion that if the act relates only to perfected claims, that is, to those upon which a discovery has already

been made, and seeks to provide only for the maintenance of the conditional right of possession already acquired thereby, this clause would be unnecessary. If a discovery had previously been made upon the unoccupied contiguous claim, this "oil bearing character" would be, to some extent at least, already determined. But the fact that some of its terms are inapt or susceptible of two interpretations does not authorize the court to enlarge the plain meaning and effect of the act where the words bear a reasonable meaning leaving them in harmony with the act as a whole. There might be a discovery sufficient to perfect the location, while at the same time it would be very desirable and tend greatly to enhance the value of the claim if further exploration and further discoveries were made. Deeper drilling might discover additional strata of oil bearing sand, for example, and such discovery on one claim might satisfactorily establish their existence under all of them. If so, it would tend to determine the oil bearing character of the contiguous claims, although wholly unnecessary to perfect the locations. The effect of the act in a case of this character would be to make such additional exploration on one of the contiguous claims suffice as the annual assessment labor upon all of them. The act is therefore not inoperative or absurd, even if the phrase is given its well established meaning to indicate the annual work required after discovery. Possibly the Congress had a different intent, but if so it does not appear from its language. Where the words of a statute are not ambiguous and their effect is not absurd, the court cannot give it other than its plain meaning, although it may appear probable that a different object was in the mind of the legislature. (*Eureka* v. *Diaz,* 89 Cal. 469, [26 Pac. 961].)

Some minor points made by the appellant may be briefly disposed of. No finding was necessary upon the allegation in the answer that the work on the Sampson claim would tend to determine the oil bearing character of the Rawley-Schley claim. Our conclusion as to the effect of the act of Congress makes this fact immaterial, under the circumstances of this case. There was no error in refusing to permit the defendant to prove admissions of Brunton made at a time when he was not in the actual service of the plaintiff. He was not a general agent, but one employed for a special and temporary service.

Therefore he had no authority to make admissions binding on Smith, except while actually engaged in the service and within the scope thereof. It does not appear that the court refused to permit proof of his admissions made while actually engaged in said service. The other rulings mentioned in the briefs are not of sufficient importance to merit discussion. We find no error.

The judgment and order are affirmed.

Angellotti, J., Lorigan, J., Melvin, J., Sloss, J., and Henshaw, J., concurred.