[Civ. No. 1644.   Third Appellate District.—February 27, 1917.]

WALTER W. CHENOWETH, Petitioner, v. JOHN S. CHAMBERS, as Controller, etc., Respondent.

CONSTITUTIONAL LAW—HOLDING OF CIVIL OFFICE BY MEMBER OF LEGISLATURE — APPLICABILITY OF AMENDMENT. — The amendment of section 19 of article IV of the constitution, which went into effect December 21, 1916, providing that no senator or member of the assembly shall, during the term for which he shall have been elected, hold or accept any office, trust, or employment under the state, is not confined in its application to senators and assemblymen to be elected after such date, but is applicable to members of the legislature whose terms began before that date and had not expired at the time the amendment went into effect.

ID.—"TERM" DEFINED.—The word "term" used in the section refers to the period for which the member was elected and not merely to his incumbency.

ID.—"SHALL" DEFINED.—The word "shall" in such section is used as a word of command, in accordance with the constitution, that its provisions "are mandatory and prohibitory, unless by express words they are declared to be otherwise," and neither legally nor grammatically does it denote mere futurity.

ID. — STATUTORY CONSTRUCTION — UNAMBIGUOUS WORDS. — Where the words of a statute are not ambiguous and their effect is not absurd, the court will not give it other than its plain meaning, although it may appear probable that a different object was in the mind of the legislature.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Third Appellate District to compel the State Controller to issue his warrant for a portion of petitioner's salary as auditor of the state board of prison directors.

The facts are stated in the oipnion of the court.

Garret W. McEnerney, A. F. Burke, and Downey, Pullen & Downey, for Petitioner

U. S. Webb, Attorney-General, and Robert T. McKisick, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Petitioner seeks the writ of mandate to compel respondent to issue his warrant for the payment of a portion of petitioner's salary. Petitioner was elected a member of the assembly for the fourteenth assembly district at the general election of November 3, 1914. His term of office began on the first Monday after the first day of January, 1915, and ended, by operation of law, on January 8, 1917. He duly qualified as such assemblyman and performed his duties as a member of the assembly at the forty-first regular session thereof and also at the special session held in January, 1916. He resigned his office as assemblyman on December 19, 1916, and his resignation was duly accepted by the Governor. He had previously, but since his election as assemblyman, been appointed auditor of the state board of prison directors and served in that capacity during the entire month of December at the Folsom state prison. He was paid

for his services prior to December 19, 1916, but was denied a warrant for the balance of that month's services.

The action of the controller is based upon amended section 19, article IV, of the constitution, which took effect December 21, 1916, and reads as follows: "No senator or member of the assembly shall, during the term for which he shall have been elected, hold or accept any office, trust, or employment under this state; provided, that this provision shall not apply to any office filled by election by the people."

"It is the contention of the petitioner," reads his brief, "that the amendment is inapplicable to him for two reasons: (1st), the amendment is prospective only in its operation and therefore does not affect senators or members of the assembly who, like the petitioner, were elected before the amendment took effect; and (2d), the petitioner had ceased to be a 'member of the assembly' before the amendment took effect and therefore at no time during the operation of the amendment was within the subject matter of the amendment or affected by it."

Section 19 of article IV formerly provided that "No senator or assemblyman shall, during the term for which he shall have been elected, be appointed to any civil office of profit under this state, which shall have been created, or the emoluments of which have been increased, during such term, except such offices as may be filled by election by the people."

The amended section is much more sweeping than its progenitor, for it applies to all offices, other than elective offices, and forbids the holding or accepting by a senator or assemblyman of any office, trust, or employment under this state, "during the term for which he shall have been elected." The purpose of the amendment, as stated by one of its proponents in the official argument addressed to the electors, was to bring the constitution into harmony with the American theory of government, that "those who execute the laws should not be the same individuals as those who make the laws"; and for the further reason "that a legislator who is holding a position on the state pay-roll is too apt to allow the wishes of the one responsible for his appointment to decide the manner in which his vote shall be cast. A man in such a position is, to say the least, not in that independent frame of mind which should be possessed by the ideal legislator."

The question here is: Was it intended to apply to petitioner, whose term of office began before the adoption of the amendment and had not expired at the time it went into effect? And, if so intended, could he evade its operation by resigning before the amendment took effect?

We may safely accept as rules of construction what was said in *Smith* v. *Union Oil Co.,* 166 Cal. 217, [135 Pac. 966], cited by petitioner: "Where the words of a statute are not ambiguous and their effect is not absurd, the court will not give it other than its plain meaning, although it may appear probable that a different object was in the mind of the legislature." No question arises here as to what the people desired to accomplish by adopting this amendment. Its object is plain enough and is manifest on its face.

The word "term" used in the section refers, we think, to the period for which the petitioner was elected and not merely to his incumbency. (*Rice* v. *National City,* 132 Cal. 354, [64 Pac. 580].) When we speak of the "term" for which an officer has been elected we mean the period of time fixed by statute during which he may serve and not to the time he may happen to serve. Said the court in *Ellis* v. *Lennon,* 86 Mich. 468, [49 N. W. 308]: "The term for which respondent was elected is clearly defined by the charter and the language, 'the term for which he was elected,' has a clear and well-defined meaning. He was elected to serve for two years, whether he served that time or not. The language used in the statute fixes the period of his ineligibility which would have attached in the absence of that language." In the instant case the statute fixed the term of petitioner's office, as assemblyman.

We need not consider the effect of petitioner's resignation prior to the going into effect of the amendment. If the section applies to a senator or assemblyman whose term of office had not expired on December 21, 1916, we do not think that petitioner succeeded in evading its force by his resignation prior to December 21st, for the section deals with a fixed period of time, to wit, the "term" of the officer and not to the period of his incumbency.

The House of Representatives of the state of Maine submitted certain questions to the supreme court of that state, but the interrogatories did not reach the court until after the legislature had adjourned. For this and other reasons

a majority of the court declined to respond to the request. Three of the judges dissented from this refusal, and, in answer to one of the interrogatories, said: "The constitution in terms (art. IV, pt. III, sec. 10) prohibits the appointment of a senator or representative, during the term for which he shall have been elected, to any civil office of profit under this state, which shall have been created or the emoluments of which increased during such term; i. e., the term for which he was elected. As to such officers the appointment itself is prohibited, and the prohibition continues, not only while the member retains his seat in the legislature, but continues until the expiration of the term for which he was elected. He cannot, therefore, be appointed to such office during that term, even though he has resigned his seat in the legislature." (*Advisory Opinion to Governor*, 49 Fla. 269, [39 South. 63]; *Ellis* v. *Lennon*, 86 Mich. 468, [49 N. W. 308]; *People ex rel. Sherwood* v. *State Board of Commissioners*, 129 N. Y. 360, [29 N. E. 355].)

Respondent concedes that the amendment was not intended to nor does it operate retroactively. His contention is that it should be given prospective effect from and after December 21, 1916. There is no disagreement among counsel as to the fact that the amendment went into effect on that date. Petitioner's contention is that it was intended to apply only to senators and assemblymen thereafter to be elected, and that this is made manifest by the language employed; that the amendment speaks only in terms of futurity; that it disqualifies only those "who *shall* be elected; and further provides that the disqualification shall operate only during the term for which they *shall have been elected*"; thus "expressly and in two ways indicates the intention of the framers that it should have a prospective operation only." This interpretation means that senators chosen when petitioner was elected are not disqualified for two years from and after the first Monday in the year 1917. If the amendment had been proposed by the legislature, a possible inference might arise that the members did not intend to disqualify themselves. The amendment, however, was proposed by the people at large, through the initiative, and we may safely assume what was common knowledge that it was intended to reach a practice in state administration of many years' standing and which the people believed should be presently eradicated. The

amendment had its origin in a spirit for reform that permeated the state, and was intended to cure what the people believed to be a present existing evil and not merely one likely to arise in the future. Did they so express their intent as to make it imperative on the court, under accepted rules of construction, to hold, as is now contended, that ''grammatically (and hence legally) the amendment is limited in its operation to such senators and assemblymen as shall be elected after it takes effect?''

The stress of the argument requiring us so to hold rests upon the presumption that the grammatical construction of the language ''during the term for which he shall have been elected'' compels the conclusion that ''the prohibition is expressed in terms of simple futurity, and the class of officers to be affected is grammatically limited to such as should be elected *after* the amendment becomes operative.'' It is urged that ''the verbs are all in the future tense''; that the word ''shall'' the simple future; that the class of senators and assemblymen to which the act shall apply ''is expressed in the *future perfect tense* as senators or assemblymen who *shall have been elected*''; that, in employing the *future perfect* tense the amendment limits its application to senators and assemblymen who shall be elected *after* the amendment takes effect.

We are quite satisfied that the word ''shall'' where first used lends no force to petitioner's contention. Neither legally nor grammatically does it denote mere futurity. It is used here as a word of command, in accordance with the constitution, that its provisions ''are mandatory and prohibitory, unless by express words they are declared to be otherwise.'' (Const., art. I.) In Fernald's Working Grammar of the English Language, page 141, the distinction between ''shall'' and ''will'' is pointed out and the author says the difference between these two auxiliaries ''in the expression of future action or state is one requiring careful study.'' The author states that primarily ''shall'' denotes obligation. ''In the first person it simply denotes future fact. In the second and third person the idea of obligation remains, and is felt to be imposed by the person speaking; hence, you 'shall' or 'they shall' means, I will compel you or them to act. . . . Consequently you (he or they) shall, expresses command or necessity, never simple future action.'' In the amendment the word ''shall'' must be read in connection with its context.

"No senator or member of assembly shall," etc., which is a command that senators and assemblymen shall not hold or accept any office. There is here no suggestion of futurity. The language is imperative and is directed to every member of the legislature in the present tense. We do not think that the word "shall" where first used in the provision conveys the idea of futurity at all. On the contrary, it carries with it an implication which should aid us in giving the proper construction to what follows.

The expression "during the term for which he shall have been elected" presents a question of more difficulty. In a strictly grammatical sense the phrase, standing alone, conveys the idea of futurity. Reading the section in its entirety it does not appear to us imperatively to demand a construction contrary to what we have the right to assume the electors, in voting on the amendment, understood to be its purpose and the class of officers to whom it was intended to apply. The phrase or its equivalent is frequently found in statutes and constitutions and the cases show that it is applied to past as well as to future acts or conditions. As was said in *Norris v. Sullivan,* 47 Conn. 474: "The words 'shall have levied' are susceptible of both past and future application; they furnish a convenient form for legislative use when it is desired to give all-inclusive force to a single expression. Therefore, as they may mean future, or past and future, it becomes a question of legislative intent in each statute." Respondent points out that such expressions are so frequently found in statutes that the code of Wisconsin, section 4972, established the following among other rules of construction: "1. The words 'shall have been' include past and future cases." In a Missouri statute with respect to the time of commencing an action there was a proviso "that if any action shall have been commenced within the time prescribed in this section, and the plaintiff therein suffer a nonsuit . . . such plaintiff may commence a new action," etc. This statute was before the court in *Clark et al. v. Kansas City etc. R. R. Co.,* 219 Mo. 524, [118 S. W. 40], and it was there contended that the grammatical construction of the statute made it inapplicable to actions commenced before its passage. We venture to quote at some length from the opinion which seems to us not only sound law but good, ordinary common sense:

"Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the legislature and unmistakably expressed in legislative words. *Expressum facit cessare tacitum.* We must not interpret where there is no need of it.

"Therefore, if the law says that it is to operate only upon cases to be brought thereafter, if it in terms excludes pending cases, then we have nothing to do but to enforce it. Attending to that view, we do not read the statute as contended by counsel for the respondent. Its use of the future form of the verb, 'commence,' as developed in the phrase 'shall have been commenced,' in correct usage in the discourse of good writers and speakers, includes the past as well as the future. That phraseology in a statute has been held by the supreme court of Connecticut to be 'susceptible of both past and future application; they [the words] furnish a convenient form for legislative use when it is desired to give all-inclusive force to a single expression. Therefore as they may mean future, or past and future, it becomes a question of legislative intent in each statute.' . . .

"Our own statute on construction (R. S. 1899, sec. 4160), requires that 'words and phrases shall be taken in their plain and ordinary or usual sense.' With that rule in mind, let us illustrate: If a rule were bulletined on a given Tuesday by the headmaster in charge of teaching grammar in a school, as follows: 'No pupil shall be whipped twice for a mistake which *shall have been made* in parsing' would any boy in the school take the rule to apply only to *future* mistakes in parsing? Could he not well plead the rule (with high hope of its allowance) if his mistake and one flogging occurred on the Monday prior and another flogging was threatened on the Wednesday subsequent to the rule for the same mistake?

"Or if C, a plantation owner, is building barns and writes his overseer: 'Paint all barns red that *shall have been commenced,*' would B, his overseer, take that command to mean that only barns commenced *after* the order should be painted red?

"Nay, if a very stickler for grammatical precision—a John Horne Tooke, a Lindley Murray or a Dr. Marsh—should make a New Year's rule for his self-guidance, viz.: 'If my reading of any book *shall have been commenced,* I will finish it,' would he construe his own rule not to include Anatomy or Mel-

ancholy, or the Decline and Fall, put in reading on the prior Christmas?

"We may presume all legislators grammarians, but that presumption would not drive us to the conclusion that they meant only future action when they wrote 'shall have been commenced.'"

Section 19, article V, of the constitution was amended in 1908 and relates to the compensation of state officers. It reads: "The governor, . . . and surveyor-general shall, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished *during the term for which they shall have been elected,* which compensation is hereby fixed for the following officers as follows: . . . such compensation to be in full for all services by them respectively rendered in any official capacity or employment whatsoever during their respective terms of office; provided, however, that the legislature may, by law, diminish the compensation of any or all of such officers, but in no case shall have the power to increase the same above the sums hereby fixed by this constitution." The salaries of the officers named were materially increased by the amendment. It went into effect November 3, 1908. Kingsbury, the then surveyor-general, demanded of the controller a warrant for the unpaid balance due him for the month of November, 1908, calculated at the rate fixed for his salary as surveyor-general by the amendment. His demand was denied and he brought mandate in this court, reported in the case entitled *Kingsbury* v. *Nye,* 9 Cal. App. 574, [99 Pac. 985]. Both parties seek support in this case. The point now under discussion was distinctly raised and it was contended by respondent "the amendment must be deemed to have a prospective operation and to apply to the offices enumerated, upon the expiration of the terms of the present incumbents and not before." In reply we said: "The point made that the rule requiring that the amendment be given a prospective effect necessarily postpones its operation until after the present terms expire, and that any other view would be to give a retroactive effect to the amendment, we think, cannot be sustained. The amendment, as we apply it, is in no sense given a retroactive operation; it is simply given force from and after its ratification, and it operates prospectively thenceforward. If, as we have held, the amendment

took effect upon its ratification, and operated, as respondent admits, prospectively, we know of no authority for holding that its operation must be postponed until the terms of the incumbents have expired.'' The rules of grammar were not invoked in that case. The decision, favorable to petitioner, turned largely on the view we took that the inhibition to the increasing of salaries was addressed to the legislature. Said the court: ''The amendment under review having gone into operation from the date of its adoption, it must be given effect thenceforward, unless we can say that some restriction has been put upon its operation, either by the terms of the amendment or by implication derived from the terms so used. We can find nothing in any of the terms, and nothing is claimed to be found therein, except the provision as to the increase or diminution of the compensation, which we hold was addressed to the legislature alone. Had such intention dwelt in the minds of the proponents of the amendment, it would have been easy and simple to restrict its effect and withhold its benefits from present incumbents.'' The case is not directly in point, but it must be admitted that the value of the decision would be greatly impaired if the strict rule of grammar now urged should be held to prevail instead of the more reasonable rule of construction adopted by the courts.

Petitioner cites many cases in support of this contention where the word ''shall'' is used or verbs are expressed in the future perfect tense. For example: A statute conferring certain rights upon a person who had paid an assessment in the event that such assessment ''shall be set aside, altered or reduced,'' and it was held ''that such assessments only should be embraced as should be vacated, altered or reduced after the act took effect.'' (*City of Elizabeth* v. *Hill*, 39 N. J. L. 555.) A statute provided that ''Whenever a married man shall be deserted by his wife, or a married woman shall be deserted by her husband, for the space of one year . . . he or she may bring an action,'' etc. An action was brought July 21, 1874, alleging desertion July 17, 1873. The court held that the language of the statute evidenced an intention that it should have a prospective operation only. (*Giles* v. *Giles*, 22 Minn. 348.) A statute read: ''All and singular the goods and chattels, lands, tenements and real estate of every person against whom any judgment shall be obtained in any court of record either at law or in equity,'' etc. The court held

the statute to apply only to judgments entered subsequently to the passage of the act. (*Jones* v. *Stockgrowers' Nat. Bank,* 17 Colo. App. 79, [67 Pac. 177].) Section 5, article VI, of the California constitution of 1879 provided that "All actions for the recovery of the possession of .. . . . real estate, shall be commenced in the county," etc. It was held in *Gurnee* v. *Superior Court,* 58 Cal. 88, that "neither in its language nor in its spirit does it apply to actions already commenced."

These cases are cited as examples of the simple future tense. Aside from the element of futurity said to influence the decisions, it seems to us that the character of the statutes and the purposes contemplated by them would have required that they be given a prospective operation unless a contrary intention was made clearly to appear. Take, for example, the Minnesota case, giving an action where the husband or wife, as the case may be, "shall be deserted for the space of one year." Obviously, it would violate the rules of construction to give such a statute a retroactive operation. So also it may be said of a Michigan statute (cited as an example of the future perfect tense), giving the court power to grant a divorce when the defendant "shall have become an habitual drunkard." [Mich. Comp. Laws 1857, sec. 3227.] The court, in reversing the judgment granting the wife a divorce, said: "To bring the case within the fair intention of this statute, we think the defendant must have become an habitual drunkard after the marriage." The evidence was that the habits of the husband with respect to drink were substantially the same prior to his marriage and that the complainant was well aware of this when she married him. (*Porritt* v. *Porritt,* 16 Mich. 140.) Another example given as showing the weight accorded to grammatical construction is the case of *State* v. *Boyd,* 21 Wis. 210. The section of the constitution of Wisconsin is quite similar to section 19, article IV, of our constitution before its amendment in 1916. The relator was elected to an office existing previously to his being chosen a member of the legislature. The emoluments of the office had not been increased when he was elected to it, but were increased by a subsequent enactment while he was a member of the legislature, but subsequent to his election to the office of county judge. The constitution provided: "No member of the legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state which

shall have been created or the emoluments of which shall have been increased during the term for which he was elected." The court said: That according to the most natural grammatical construction of the provision, it "only forbids a member of the legislature, while such member, from being appointed or elected to any civil office which shall have been *previously* created, or the emoluments of which shall have been *previously* increased, during the term for which he was elected." It was said, arguendo: "The future perfect tense is used—an office 'which shall have been created, or the emoluments of which shall have been increased,' etc.—indicating a future action done and completed before the appointment or election, the other future action to which it refers." The writer of the opinion stated that this construction is not the one he was at first disposed to place upon the provision; that it seemed to him "that the purity and fidelity of the representative, as well as of the public interest, would be most effectually secured by excluding those persons from office who had been concerned in creating it or rendering it more lucrative. But the author of the constitution did deem it expedient to adopt such a rule of disqualification, and a much more restricted one has found its place in that instrument." We are not quite sure but that the learned justice's first impressions would have led to a safer solution than was finally reached. However, the question there was as to Boyd's right to an office which he held when elected a member of the legislature, and rules of construction, perhaps, would not have justified ousting him from that office under a provision which plainly provided that the office to which he was forbidden to be elected or appointed was an office created during the term he was serving in the legislature and not an office to which he was previously elected. The court said that the case was "not within the language of the provision, according to its most natural grammatical construction." But suppose Boyd had been elected to and was holding a civil office after (i. e., during the term for which) he had been elected a member of the legislature, a different case would have arisen. And it is just such a different case as is presented by the amendment we are considering—no member of the assembly shall, during the term for which he shall have been elected, hold or accept any office. Under the old section the disqualification came about by his participating in the creation of the office

or the increase of its emoluments. Under the new section
he is forbidden to hold or accept any office during the term
for which he shall have been elected. His participation in
creating the office is no longer the evil to guard against.
The evil intended to be combated by the amendment was
the holding or accepting by members of the legislature any
office under this state during the term of office as such mem-
bers. No possible reason can be suggested why the amend-
ment did not operate upon every member of the legislature
at the moment it took effect. Nor can any good reason be
given why its operation should be limited to members only
who shall have been elected after December 21, 1916, since
without question the mischief which it was designed to remedy
was present and quite as menacing as it would be two or four
years thereafter, and since the class upon whom it was to
operate was the same on that date as it would be at some
future date. That it was so intended when submitted to the
people there can be no doubt, and we do not think the lan-
guage used to express that intention compels us, under set-
tled canons of construction, to nullify that intention, or would
justify its nullification.

Respondent cites several cases illustrative of the fact that
expressions in statutes in the future perfect tense are not
necessarily required to be given a strictly grammatical inter-
pretation. One of these examples is found in *Lane* v. *Lane*
(Q. B.), reported in volume 65 N. S. Law Journal Reports
(1896), page 63. The statute involved was section 4 of the
Married Woman Act, 1895, reading as follows: ''Any married
woman whose husband shall have been convicted summarily
of an aggravated assault upon her within the meaning of
section 43 of the Offenses Against the Person Act, 1861, or
whose husband shall have been convicted upon indictment
of an assault upon her, and sentenced to pay a fine of more
than £5, or to a term of imprisonment exceeding two months,
or whose husband shall have deserted her, or whose husband
shall have been guilty of persistent cruelty to her, or willfully
neglecting to provide reasonable maintenance for her or her
infant children whom he is legally liable to maintain, and
shall by such cruelty or neglect have caused her to leave and
live separately and apart from him, may apply to any court
of summary jurisdiction . . . for an order or orders under
this Act.'' The act took effect January 1, 1896. The wife

applied to the justices of Glamorganshire for an order under said section, alleging the persistent cruelty of her husband. All the acts complained of were committed previous to January 1, 1896. The justices held that the section was not retrospective in its effect, and they had no jurisdiction. The wife appealed. Reversing and remanding the case there were separate opinions of the judges. The president, Sir F. H. Jeune, said: "But upon the language of the section and the reason of the thing the matter seems to be extremely clear. The words 'shall have been' are hardly ambiguous; in my view, they deal with all offenses, past and future (considered with regard to the date of the act), and not only to future offenses." Justice Barnes said: "Looking at the wording of the section and at the whole act, the question seems free from any doubt, and in my judgment the language used in section 4 is not at all ambiguous. It seems quite clear to me that the expression 'any married woman whose husband shall have been guilty of persistent cruelty to her may apply,' etc., deals with all cases of persistent cruelty which have happened prior to the decision of the court." They not only looked to the language employed but also "to the reason of the thing."

The case of *Queen* v. *Inhabitants of Christ-Church*, reported in Law Journal 1849, Michaelmas Term, 12 Victoria, page 28, is cited. There the court was considering a statute providing, among other things, that a pauper who "shall have resided" within the parish for a period of five years fixed by the statute shall thereafter be irremovable. The controversy arose in an attempt of St. John's Parish to deport one Mary Sweeny and her four children to the parish of Christ-Church. The order of removal was sustained, Lord Denman delivering the opinion. We cannot give his reasoning in full. Referring to the statute he said: "The word *shall* denotes rather the happening of the event, on which the exception is to apply, within the time assumed to have been before computed, than the future relation of such event to the time when the statute passed. It denotes the subjunctive mood rather than the future time." He stated that the claim that there is a presumption against a retrospective statute being intended "is founded on a misconception. The statute is prospective only. Its direct operation is only on removal; after it has passed it does not alter existing rights in respect of completed removals.

A space of time is an essential ingredient in the case to which it applies, and this space of time may consist in part of time passed before the statute passed, as is the case with statutes in limitation and prescription, but they are not therefore classed with the retrospective statutes."

A Minnesota statute which provided "that every dwelling-house or other building, for the construction, erection or repairs of which any person shall have a claim for materials furnished or services rendered, shall, with the land," etc., "be subject." In *Mason & Craig* v. *Heyward,* 5 Minn. 74, the court said: "The words, 'shall have a claim,' mean and refer to the time of the passage of the act, and subsequently, and comprehend claims of such nature existing when the act was passed."

Further reference to cases seems unnecessary. The future form of verbs is so frequently used by writers of statutes and constitutions and literary productions to include the past as well as the future, that we must regard it as correct usage.

We do not think that the amendment is couched in such language as to make it impossible or unreasonable for us to hold, without violating settled rules of construction, that it was intended to apply to a member of the legislature whose term began before December 21, 1916, and did not terminate until after that date.

The writ is denied.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1917. Angellotti, C. J., and Sloss, J., dissented from the order denying a hearing in the supreme court.