[Civ. No. 249. Fourth Appellate District.—July 28, 1930.]

J. RALPH McINERNY, Respondent, v. C. F. ALLE-BRAND, Appellant.

William B. Ogden and Samuel Steelman for Appellant.

Theodore Stensland for Respondent.

AMES, J., *pro tem.*—This action was brought for the purpose of obtaining possession of a certain mining claim in Imperial County. The plaintiff, in his complaint, alleges that he is the owner and entitled to the possession, under and by virtue of the mining laws of the United States, of a certain quartz or lode mining claim known and designated as the Jabon Lode Mining Claim, according to a loca-

tion notice thereof, dated and posted on the twentieth day of January, 1923, and recorded in the office of the county recorder of Imperial County, which was relocated by plaintiff by virtue of an amended certificate of location, dated October 17, 1924, and recorded on the sixth day of June, 1925, and that on or about the first day of July, 1926, the defendant entered into and upon said mining claim for the purpose of mining upon the grounds embraced therein, and ever since said time has trespassed thereon and has extracted ore therefrom.

The defendant in his answer puts in issue the title and right of possession of plaintiff in and to said property and alleges that ever since the fifteenth day of June, 1926, he was and is the owner in the actual occupation of certain mining claims which are designated "Peak Number Two," "Peak Number Three," and "Sunset Number One." This controversy arose out of the fact that the mining claims of the defendant, the actual occupancy of which is conceded, overlapped the boundary line of the Jabon claim as subsequently amended, and that the territory embraced within the claims occupied by the defendant, embraced a substantial part of the area of the Jabon claim according to said amended location.

It is conceded that the area embraced within all the mining claims involved in this controversy constitutes a portion of the public domain and was at all of the times involved in this action open to the public for mineral locations subject, of course, to the paramount title of the United States, and subject to any rights which may have been acquired by virtue of prior locations.

The court found that on or about the twentieth day of January, 1923, Antonio Contreras and Harry McPhaul made discovery of rock in place bearing valuable mineral deposits, and that they entered into possession of and located a certain mining claim designated "Jabon Mining Claim" by posting, at the point of said discovery, a notice of said location, as prescribed by the mining laws of the United States and of the state of California, and by marking the boundaries thereof on the ground by monuments, as the same are described in said location notice, a true copy of which was thereafter recorded in the office of the county recorder of Imperial County, California.

The court further found that said location, when made as aforesaid, did not interfere with any prior existing rights of other owners.

The court further found that on or about the seventeenth day of October, 1924, the plaintiff herein, who had acquired the possessory title of the original locators (if any they had), to the Jabon claim, apprehending that said original location of the Jabon Mining Claim was defective or erroneous, made a survey of the surface indications of the lode deposits referred to in said original location notice, and distinctly marked the lines and boundaries of said survey on the ground by means of substantial corner posts, and on the twelfth day of November, 1924, posted on the said surveyed area, a notice designated "amended location notice," which said amended location notice was dated the seventeenth day of October, 1924, and that on or about the sixth day of June, 1925, plaintiff caused said amended location notice to be recorded in the office of the county recorder of Imperial County, California.

The court further found that in May, 1925, the plaintiff acquired, by means of a deed of conveyance, all of the right, title and interest of the original locators of the Jabon Mining Claim, and that at the time of making said original location the locators thereof had entered into possession, and, ever since, the exclusive possessory rights to the same and to the said Jabon Mining Claim under the amended location, from its incipiency, have at all times, continuously, been held by said locators or the plaintiff as their immediate and sole successor in interest.

In pursuance of the findings, the court entered judgment in favor of the plaintiff for the possession of the disputed claim. From this judgment defendant appealed on a bill of exceptions.

The appellant attacks many of the findings of the court as not supported by the evidence, and, in particular, the finding with respect to the discovery of rock in place bearing valuable mineral deposits by the original locators on January 20, 1923, and also the finding as to the exclusive possessory rights to said mining claim being vested in the plaintiff. It appears from the evidence that on the thirteenth day of February, 1924, subsequent to the posting of the notice on the original Jabon claim, but prior to the

recordation thereof, one Henry McMahon located a claim known as the ''Mary Jane,'' extending in an easterly and westerly direction and overlapping a portion of the Jabon claim. But this claim was abandoned by McMahon in June, 1925. Between April 4, 1925, and March 22, 1926, notices of location of the ''Peak'' claims and the ''Sunset'' claim, now occupied by defendant, were posted and filed. There was no evidence introduced at the trial of the discovery of a mineral lode upon the property by either of the original locators, unless the declarations contained in the original notice of location could be considered by the court as such evidence. That location notice contains the following recital: ''This Mining Claim, the name of which is the Jabon Mining Claim, situate upon lands belonging to the United States of America, and in which there are valuable mineral deposits, was entered upon and located for the purpose of exploration and purchase, etc.'' Said location notice contains an additional recital, as follows: ''The length of the claim is 1500 feet and we claim 1300 feet in a southwesterly direction and 200 feet in a northeasterly direction from the center of the discovery shaft at which this notice is posted lengthwise of the claim, together with 300 feet in width of the surface grounds, on each side of the center of said claim. The general course of the lode deposit and premises is from the northeasterly to the southwesterly.'' ▮ But the recitals in the location notice cannot be accepted as proof of the various steps essential to perfect a mining claim. In the case of *Mutchmor* v. *McCarthy*, 149 Cal. 603 [87 Pac. 85, 86], the Supreme Court, through Chief Justice Beatty, speaking of the effect of the recitals in the location notice, as evidence, says: ''And besides, if it had contained every essential requisite of a location notice, the copy of the record would have proved nothing except the bare fact that such notice had been recorded. It would not have proved that it was posted on the claim, or that the location was so marked on the ground that its boundaries could be readily traced, or that they included the apex of a lode or any valuable mineral deposit in place, or that the necessary work had been done to keep the claim good. Every one of these things, with the possible exception of the posting of the notice, was essential to the validity of the claim.'' The only evidence of the discovery of a mineral

vein on the Jabon claim, either as the same was originally located or as subsequently amended, is contained in the testimony of Edward L. Haff, a United States mineral surveyor, who made a survey of the Jabon claim on behalf of the plaintiff on the sixteenth and seventeenth days of September, 1927. This witness testified as follows: ''I found some crystals which I am satisfied in my own mind were the crystals that are known as cyanite in the discovery cut and particularly in the hole about one hundred fifty feet to the southwest of the discovery cut on the Jabon and also all along the center line, especially on top of the lode marked on the map Jabon Peak. There were a number of—a great deal of material scattered over the surface of the claim.'' But this discovery of a mineral-bearing lode or vein, if such it was, was not made until long after the location notices under which defendant claims title, had been filed and posted, and more than one year after the time that he acquired possession. It will be recalled that the original Jabon claim extended in a northeasterly and southwesterly direction, but the plaintiff now contends that the vein extends in a northwesterly and southeasterly direction. If the testimony adduced by the plaintiff would tend to show the existence of a mineral vein through said property, the inference would be that such vein ran in a northeasterly and southwesterly direction, but aside from the testimony of Haff the only evidence adduced showing the direction of a mineral vein or lode was adduced by the defendant which indicated that the veins of ore in the locality of these mining claims extended in an easterly and westerly direction, rather than in the direction indicated by the plaintiff's evidence, if any such indication can be inferred therefrom, and it was in this direction and along these lodes that defendant's claim extended. Witness Johnson, who was called on behalf of the defendant and who was present when ''Peak Claim Number One'' was located, testified that the cyanite ran east and west. ''The deposit lays in the veins.'' This is the only direct evidence in the record as to the direction of the ore-bearing veins within the limits of these mining claims. All of the mining claims involved in this action are claims commonly known as lode or quartz claims. Section 1426 of the Civil Code is as follows:

"Any person, a citizen of the United States, or who has declared his intention to become such, who discovers a vein or lode of quartz, or other rock in place, bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposit, may locate a claim upon such vein or lode, by defining the boundaries of the claim, in the manner hereinafter described, and by posting a notice of such location, at the point of discovery."

█ It will be noted from the foregoing section of the Civil Code that the discovery of a vein or lode of quartz is a necessary and essential step in the perfection of a title to a mining claim. And while it is true that a previous location without discovery may become valid by a subsequent discovery provided the rights of the other locators do not intervene, an actual discovery must be made. In the case of *Book* v. *Mining Co.*, 58 Fed. 106, 120, it is said: "When the locator finds rock in place containing mineral he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery and warrants the prospector in making a location of a mining claim." In *Smith* v. *Union Oil Co.*, 166 Cal. 217 [135 Pac. 966, 968], it is said: "It is true that in order to maintain his right of possession under the mining laws against another who has entered to make a mineral location in his absence, the claimant must prove a previous discovery as well as the previous marking of his lines." In the case of *New England etc. Oil Co.* v. *Congdon*, 152 Cal. 211 [92 Pac. 180, 181], the court says: "The finding that there has been no discovery of oil upon land was, in the absence of a retention of possession and a prosecution of work, fatal to the validity of plaintiff's alleged location. By the terms of the statute of 1897 (29 U. S. Stats. L. 526 [U. S. Comp. Stats. 1901, p. 1434]) the entry and patenting of lands containing petroleum or other mineral oils are governed by the provisions of the law relating to placer claims, and it is now well settled that a discovery of mineral within the limits of the claim is as essential to the validity of the location in the case of placers as it is in lode locations." (Citing *Nevada Sierra Oil Co.* v.

*Home Oil Co.,* 98 Fed. 673; *Olive L. & D. Co.* v. *Olmstead,* 103 Fed. 568.)

However, a locator seeking to perfect his possessory title prior to making a valid location is required to do more than post his location notice and mark his boundary. In *Smith* v. *Union Oil Co., supra,* the court said: "It has been held that before a discovery an actual occupant diligently engaged in the work of discovery has the better right. But after discovery and location, continuous actual occupation was not required by any statute, in order to preserve the paramount legal right. In the course of years it transpired that, after discovery and complete location had been made, one person or corporation would acquire several such claims and allow them to lie idle and undeveloped. This was against the policy of the law, which was to encourage the working of the mines and the extraction of precious metals therefrom." The court then points out that in order to remedy this situation an act was passed in 1872 requiring that on each claim located, and until a patent had been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during the year. And it is pointed out that the annual assessment work required by the act of Congress of May 10, 1872, now incorporated in section 2324 of the United States Revised Statutes [30 U. S. C. A., sec. 28], applies only to work required to be done after location has been perfected. In *Miller* v. *Chrisman,* 140 Cal. 440 [98 Am. St. Rep. 63, 73 Pac. 1083, 1084, 74 Pac. 444], the court says: "It is to be remembered that it is not essential to the validity of a location that the discovery shall have preceded or shall coexist with the posting of the notice and the demarcation of boundaries. The discovery may be made subsequently, and when made operates to perfect the location against all the world, saving those whose *bona fide* rights have intervened. One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work towards discovery, is fully protected against all forms of forcible, fraudulent, surreptitious or clandestine entries and intrusions upon his possession." In the case of *McLemore* v. *Express Oil Co.,* 158 Cal. 559, the court says: "But where the location is incomplete, no question of assessment work is involved. What the attempting locator

has is the right to continue in possession, undisturbed by any form of hostile or clandestine entry, while he is diligently prosecuting his work to a discovery. This diligent prosecution of the work of discovery does not mean the doing of assessment work. It does not mean the pursuit of capital to prosecute the work. It does not mean any attempted holding, by cabin, lumber pile or unused derrick. It means the diligent, continuous prosecution of the work, with the expenditure of whatever money may be necessary to the end in view." In the case of *Borgwardt* v. *McKittrick Oil Co.*, 164 Cal. 650 [130 Pac. 417, 421], in addition to holding that actual possession is essential while the work of discovery is in progress, after citing *McLemore* v. *Express Oil Co.*, *supra*, the court says: "The attempting locator's possession is protected only while he may fairly be held to be actually engaged in such work as may reasonably be held to be discovery work."

While it is not conceded by appellant that the affidavits of the annual assessment work upon the claim were sufficient to prove that the necessary amount of labor required to be done annually was proved, yet for the purposes of this decision we will assume that they prove that labor was performed on the Jabon claim of the value of one hundred dollars for each year, after the attempted location by Contreras and McPhaul, but the annual assessment work required by law to perfect a location does not comply with the requirements set forth in the foregoing decisions. We have scrutinized the record with a view of finding therein evidence of diligent prosecution of the work and such continuous occupancy as to vest a possessory title to the mining claim in the plaintiff, but we think that the evidence falls far short of the requirements. We may briefly summarize the evidence as follows: It appears that the plaintiff did not reside upon or in the vicinity of the disputed location; that during the period between October, 1924, and commencement of this action he was personally upon the property but five or six times, and between some of his visits intervals of many months elapsed. The evidence of any discovery work is extremely meager. A portion of his testimony is as follows: "I went over the lease I claimed in 1924, October 17, 1927, and I never went over the lease completely again until September of this year."

Again he testified: "In regard to the southeast corner, we packed that timber in there. We packed that in there ourselves in October, 1924. Three years ago. I believe the 7th day of December, 1924." Again he testified: "In my direct testimony I also spoke of some cuts on the east side line here. I don't recall when all of that work was done. There has been quite a little work done there. This last work was done. I had this work done (indicating) the part marked 1926 assessment cut. That only refers to the most easterly mark on there." He further testified: "Here is indicated the Homer Black 1927 cut, he was working there when I got the property." He further testified: "All the work claimed for the year ending July 1, 1927, is the assessment work for 1926." There is also testimony that Contreras did some work on the claim in June, 1926, and that prior to that time there was no work going on in the district, except on claims known as the Vitrefrax. In the immediate vicinity of the Jabon lode there was no work going on until 1926.

It is apparent that a portion of the work described in the testimony of plaintiff constituted the so-called assessment work, which, as pointed out in the authorities cited, does not constitute a continuous prosecution of the work sufficient to establish a possessory title. It must be borne in mind that neither of the original locators of the Jabon claim testified on behalf of the plaintiff, and whatever their activities, by way of discovery work may have been, is a matter of conjecture except what may be inferred from the very meager evidence afforded by the purported affidavits of assessment work. Giving to the evidence of the plaintiff the most liberal possible construction, and construing it most favorably for him, it proves at most but an occasional visit to the property, labor performed at intermittent periods in a most perfunctory manner. Clearly this is insufficient.

We therefore conclude that evidence wholly fails to show any valid discovery of a quartz-bearing lode or vein or continued occupation or diligent operations for the purpose of discovery of such vein or lode, as prescribed by law, prior to the intervening rights of the defendant.

Plaintiff argues at length that his adversary failed to show that he has a possessory title to the claims occupied

by him. But beyond the fact that he is and has been since July, 1926, in the continued possession of the claims to which he asserts title, we need not be further concerned. The rule is well established in California that in a possessory action of this character, the plaintiff must rely upon the strength of his own title rather than upon the weakness of that of his adversary. Many authorities might be cited in support of this rule, but we will content ourselves by reference to the following: *Weed* v. *Snook,* 144 Cal. 439 [77 Pac. 1023]; *Reay* v. *Butler,* 95 Cal. 206 [30 Pac. 208]; *Schroder* v. *Aden Gold Min.* Co., 144 Cal. 628 [78 Pac. 20]. We think the evidence wholly fails to support the findings above referred to.

The judgment is reversed.

Cary, P. J., and Marks, J., concurred.