[File No. 6559.]

STATE of North Dakota on the Relation of ALVIN C. STRUTZ, Attorney General, Petitioner, v. OLE B. STRAY, Respondent.

(281 N. W. 83.)

Opinion filed August 13, 1938.

Alvin C. Strutz, Attorney General, and T. A. Thompson, Assistant Attorney General, for petitioner.

J. K. Murray and Bernard Smith, for respondent.

Nuessle, J. In this proceeding the State, through the attorney general, challenges the right of the defendant Ole B. Stray to hold the office of Comissioner of University. and School Lands. In his application in that behalf he invokes the exercise by this court of original jurisdiction in quo warranto.

In support of his application the relator shows that the defendant Stray at the general election in November, 1938, was elected a member of the legislative assembly of the state of North Dakota for a term of two years, beginning on the first Tuesday in January, 1937; that he qualified for such office, entered upon the duties of the same, and participated in the session of the legislative assembly held in 1937; that thereafter and on the 20th day of October, 1937, the defendant was appointed to the office of Commissioner of University and School Lands by the Board of University and School Lands; that he accepted such appointment, qualified for and entered into the performance of the duties of the office, and now claims to be the lawful incumbent thereof. It further appears that on the 26th day of July, 1938,

the defendant resigned his office as a member of the legislative assembly.

Section 39 of the Constitution of the state of North Dakota provides:

"No member of the legislative assembly shall, during the term for which he was elected, be appointed or elected to any civil office in this state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected; nor shall any member receive any civil appointment from the governor, or governor and senate, during the term for which he shall have been elected."

At the election held on June 28, 1938, there was submitted to the electors by initiative petition, the following proposed constitutional amendment:

"An Act to amend the Constitution of the State of North Dakota, prohibiting members of the Legislative Assembly from receiving or accepting employment from the State during the term for which they are elected:

"Be it enacted by the people of the state of North Dakota:

"Section 1. The Governor or any officer of this state, or any manager or executive head, or other person employed either directly or indirectly in any department, bureau, commission, institution, or industry of this state, or any member of any state board shall not appoint a member of the legislative assembly to any civil office or employment of any nature whatsoever, during the term for which said member of the legislative assembly shall have been elected. No member of the legislative assembly shall accept any such appointment to civil office or other employment during the term for which he was elected."

This proposed amendment to the Constitution was approved by the voters at the election held on June 28, 1938, and pursuant to the provisions of §§ 25 and 202 of the Constitution of North Dakota became operative and effective on July 28, 1938.

In support of his application for a writ of quo warranto, the relator first contends that, under the facts as shown in the instant case, the appointment of the said Stray as land commissioner was illegal

and void because when made it was contrary to the terms of § 39 of the Constitution above set forth.

Section 39 of the Constitution is clear and unequivocal in its statement. The prohibition therein of appointment of members of the legislative assembly to office during the terms for which they were elected is expressly limited to those from the governor or from the governor and the senate. In the instant case, however, the appointment is from the Board of University and School Lands. While it is true that the governor is a member and the president of that board, nevertheless, the appointments made by the board are not appointments from the governor. The board is a constitutional body. The superintendent of public instruction, the governor, the attorney general, the secretary of state and the state auditor, all elected by the people, constitute its membership. See § 156 of the Constitution. The commissioner is its agent, appointed pursuant to the provisions of § 285, Compiled Laws 1913. Each member of the board has a voice in the conduct of its affairs equal to that of any of the others. No appointment can be made except by the action of a majority. We therefore hold that the appointment of the defendant to the office of Commissioner of University and School Lands was not in contravention of § 39.

But the relator further contends that, in any event, though the appointment of the defendant was valid in the first instance, it became void and ineffective by reason of the adoption on June 28, 1938, of the constitutional amendment heretofore set out. It becomes necessary then to determine the meaning and effect to be given to this constitutional provision. To do this, of course, we must look to the words of the amendment itself. It is to be noted that it contains two prohibitions. The first prohibits the appointment of a member of the legislative assembly to any civil office or employment during the term for which said member shall have been elected. The second prohibits the acceptance by any member of the legislative assembly of any such appointment during the term for which he was elected. Clearly the provision prohibiting the making of an appointment is prospective. It is directed against the making of appointments. It can refer only to appointments made subsequent to the adoption of the amendment. All this is conceded by the relator. It is further conceded that the second section of the amendment is also prospective in its operation.

But the relator contends that it is prospective not only in that it affects appointments in the future but also in the sense that from the date of its adoption it avoids any appointments of members of the legislative assembly made during the terms for which they were elected, though such appointments were made prior to its adoption and were legal and valid when made. In that behalf the relator argues that the wording of the amendment is such that even though an appointment were made, as in the instant case, prior to the adoption of the amendment and were legal and valid when made, nevertheless there is an accepting and receiving by the appointee of employment under it from day to day as time goes on; that the amendment prohibits such an accepting or receiving employment by members of the legislative assembly from the state during the terms for which they are elected. And so he says that after the adoption of the amendment any such prior appointment became invalid and void as of the date of the adoption thereof. In support of this argument the relator cites and relies upon the case of Chenoweth v. Chambers, 33 Cal. App. 104, 164 P. 428. An examination of this case discloses that the facts are parallel with those in the case at bar with, however, this exception: There the words of the amendment were "no senator or member of the assembly shall during the term for which he shall have been elected *hold or accept* any office, trust, or employment under this State . . .." While our amendment here for construction reads "No member . . . shall *accept* any such appointment to civil office or other employment during the term for which he was elected." The difference between these two provisions is wide and at once apparent. The California amendment prohibits not only the *acceptance* by him of any office, trust or employment during the term for which the member was elected, but also prohibits his *holding* any such office, trust or employment during that time. The words "hold" and "accept" are stated disjunctively. Each and both are forbidden. Our amendment under consideration is directed against the accepting of an appointment to any office or employment. The relator insists that the words "accept" and "receive" are in effect synonymous and that each of them is broader than and includes the meaning of the word "hold." So he argues that the prohibition against accepting an appointment is as well a prohibition against holding an appointment. It seems to us, however, that

such a construction would not ordinarily be given to the language of the provision in question. And the proponents of the California amendment when they used the words "hold" and "accept" in the disjunctive, must have attached widely different meanings to those words.

It is further urged that the title of the measure uses the words "receiving or accepting employment" and that the title may be resorted to in order to determine the intent expressed by the measure itself. The Constitution, § 25, requires that every measure be submitted by its ballot title which shall fairly represent the subject matter of the measure. Nevertheless we think that the general rule of construction is applicable. That is, that the title of an act cannot control its words though it is to be considered and may provide aid in showing what was in the minds of the enacting body. Lewis's Sutherland, Stat. Constr. 2d ed. §§ 339, et seq.; Curoe v. Spokane & I. E. R. Co. 32 Idaho, 643, 186 P. 1101, 37 A.L.R. 923, and note. Let us then further examine the amendment here involved. As we have heretofore pointed out, it includes two prohibitions. The first is directed to the appointing power and forbids the making of an appointment after the adoption of the amendment. The second is directed to the person appointed. It forbids him, quoting the words of the clause in question "to accept any such appointment." "Such appointment" must refer to the appointment previously defined and described. That appointment is an appointment made subsequent to the adoption of the amendment. There is a prohibition against the acceptance of such an appointment; there is no prohibition against the holding of an appointment made prior to the adoption of the amendment. The vice in relator's argument is that it assumes the prohibition to be against the employment pertinent to an appointment after it was validly made and accepted as well as against the acceptance of an appointment. Though the language of the amendment, as we read it, is clear and definite, it is not amiss to consider the purpose which manifestly impelled its adoption. This is especially so in view of the relator's contention. The amendment was not adopted to penalize on account of appointments made prior to its adoption. Its purpose was to prevent the exercise of influence by an appointing officer or body over the mind of a legislator through the lure of an appointment. Or, as

said by Mr. Justice Story, in speaking of the reasons for excluding persons from office who have been concerned in creating them or in increasing their emoluments, "To take away as far as possible any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness." Story, Const. 5th ed. § 867. The purpose of the amendment could not be furthered at all by making it applicable to valid appointments already made and accepted. If the seeds of gratitude or obligation were already planted in the mind of an appointee they would not in the least be made sterile through the avoidance of the appointment by the amendment. And, above all, had such a purpose and intention actuated the proponents of the amendment it would have been simple and easy, it would have required but two words, to have made the amendment applicable as well to appointments already made and accepted as to those made or accepted after the adoption of the measure.

What we have said above is determinative of the merits of the application. Other questions were raised and urged but it is not necessary that they be considered.

The writ is denied.

CHRISTIANSON, Ch. J., and SATHRE, BURR and MORRIS, JJ., concur.