[Sac. No. 5275. In Bank.—December 26, 1939.]

FRANK P. DENMAN et al., Appellants, v. JOE B. SMITH et al., Respondents.

P. E. Coraney for Appellants.

Arthur A. De Chambeau, Jess Hession and E. H. Woodard for Respondents.

THE COURT.—In accordance with the allegations of a complaint which was entitled ''Action possessory and quiet title mining claims'', the plaintiffs sought judgment for the restitution to themselves of certain quartz mining claims of which they assertedly had been dispossessed by the defendants, to have the title thereto quieted in themselves, and for damages for the ''value, use and occupancy'' of the said

premises by the defendants. Each of the defendants answered the said complaint, specifically denied in his answer each and all of the essential allegations of the complaint, set up a title and right of possession in himself, alleged that the plaintiffs claimed some right or title to the premises, and prayed that title thereto be quieted in each or all of said defendants. On the trial of the action each of the several defendants Smith, Alice Lovatt, Jenny Brandon, Harry Charles, E. H. Woodard and "Mrs. E. H. Woodard" were represented by an attorney; no one appeared for any of the other defendants. The asserted title of the plaintiffs was predicated upon their allegation to the effect that on March 11, 1935, they went upon the public domain of the United States, "theretofore wholly unoccupied and unclaimed", and thereupon located those certain lode mining claims which were described in the complaint as Early Dawn Nos. 1, 2, 3, 6, 7 and 8,— which said allegation the trial court specifically found was "*not true*". (Emphasis added.) In addition to such finding the trial court found that, "It is not true that at the time the Plaintiffs attempted their location of each and every one of said claims that the lands sought to be so impressed by such locations, and each and every one thereof, were subject to location by anyone"; that "said lands, by reason of the same and all thereof being held by valid locations of Defendants Joe B. Smith and Florence Smith under and by virtue of those certain locations of said Joe B. Smith and/or Florence Smith of said claims being known as the 'White Cloud' [placer claim], 'Florence', 'Florence Extension', and 'Ella' [lode claims], were not unappropriated public domain",—and, in substance, that the lands embraced in the claims assertedly located by the plaintiffs were practically identical with the lands held by the defendants Joe B. Smith and Florence Smith under [said] claims known as the "White Cloud", "Florence", "Florence Extension" and "Ella". Other material findings of fact made by the trial court were that " . . . long prior to March 11, 1935, . . . defendant Joe B. Smith had located said lode mining claims named and known as the Florence, Florence Extension and Ella", as well as the White Cloud placer claim; that "said defendants had performed the necessary assessment work required by law to be performed on each and every one of said claims for the year ending July 1, 1934, and filed the necessary Proof of Labor there-

for''; that ''said claims were not subject to relocation, if at all, until the 1st day of July, 1935''; that for the said ''year ending July 1, 1935, Defendants Joe B. Smith and Florence Smith had performed the required assessment work on the White Cloud placer, the Florence, Florence Extension and the Ella mining claims''; and that ''Plaintiffs' locations and each and every one thereof were a nullity, the same being placed on lands already held by valid mining locations''.

However, the trial court did not find that the defendants Joe B. Smith and Florence Smith were entitled to have their title quieted, by reason of the fact that they had failed to offer sufficient evidence to establish that right.

Based on the findings hereinabove set forth, as well as on the conclusions of law made in accordance therewith, the judgment which was rendered recited that ''Plaintiffs have no estate, right, title or interest in and to'' the so-called Early Dawn mining claims; that ''Plaintiffs' locations of said mining claims were placed upon lands already located and appropriated by Joe B. Smith and Florence Smith''; that ''Plaintiffs' purported locations were therefore a nullity and void and no right attached to said lands, therefore, Plaintiffs have no title therein that could be quieted''; and that ''Plaintiffs are not entitled to receive any damages whatsoever from Defendants or from any of them''.

Following the denial of their motion for a new trial, the plaintiffs have appealed to this court from such judgment.

As hereinbefore has been indicated, no decree was entered regarding the request of each or any of the defendants to have quieted as against the plaintiffs the respective titles, if any, of the said defendants in the properties here concerned. But since no appeal from the judgment that was rendered has been presented to this court in behalf of any of the defendants, no question is before this court with regard to the soundness of the said judgment as far as it may or does affect the rights of any of the defendants to have quieted his or their asserted title in the said properties.

On the trial of the action, at the close of plaintiffs' case the defendants offered evidence to show a prior location by them of the claims here in dispute, including evidence as to the validity of their locations as far as compliance with statutory provisions is concerned, as well as evidence relating to the

performance by them of the required annual assessment work, including the period ending July 1, 1935.

However, in each of several respects appellants contend that the evidence failed to show that the several locations assertedly made by the defendants Smith were made in accordance with the provisions of the statutes in that regard. (Sec. 1426 et seq., Civ. Code.) The principal objections made in that connection by appellants, in effect, are: that some of the location notices filed by defendants Smith were defective for the asserted reason that they failed to properly describe the respective claims in that some of the said notices specified a description different from that indicated by the boundaries as erected on the claims by the defendants Smith; that the designation of Chalfant station as the "natural object" by which to identify the claims in dispute was so inaccurate and insufficient that it could not be said to constitute the "permanent monument" contemplated by the provisions of the statute; also that some of the boundaries indicated by defendants were not sufficiently marked on the ground to meet the statutory requirements in that respect. Although under the rule to be hereinafter discussed it is not here essential to determine whether such asserted defects were or are present—as far as they may or might affect defendants' title —nevertheless, it may be said, generally, that it has been ruled, in effect, that notices of location should be liberally construed, and that "monuments erected in the field should control courses and distances as indicated upon paper", which statement it was held "embodies a correct rule many times declared by this court". (*Schroder* v. *Aden Gold Mining Co.,* 144 Cal. 628, 629 [78 Pac. 20].) As was said in the case of *McInerny* v. *Allebrand,* 107 Cal. App. 457, 461 [290 Pac. 530], " . . . the recitals in the location notice cannot be accepted as proof of the various steps essential to perfect a mining claim. . . . 'And besides, if it [the location notice] had contained every essential requisite of a location notice, the copy of the record would have proved nothing except the bare fact that such notice had been recorded. It would not have proved that . . . the location was so marked on the ground that its boundaries could be readily traced, . . . ' ". Also, in the case entitled *McLean* v. *Ladewig,* 2 Cal. App. (2d) 21, 26, 27 [37 Pac. (2d) 502], one of the claimants to certain mining properties asserted that a location made by another

claimant thereto was not valid because of alleged defects in the location notice, which defects were similar to those here asserted by plaintiffs; and in that case the court said:

"Plaintiff concedes that the location notice does not describe the Good Luck Mine in accordance with the monuments which at the time of the location were erected on the ground. She contends, however, that such monuments control over the description and courses as contained in the location notice. It is said in 40 Corpus Juris, page 807: 'As a general rule, a mining location is not rendered invalid by a mere variation or discrepancy between the boundaries of a claim as marked on the ground and the courses and distances described in the location notice or certificate. In such a case if the markings on the ground are clearly ascertainable and can be definitely located they will control, as to the location and extent of the claim.'" And again: "The natural objects or permanent monuments referred to in the instant location notice are 'the ridge east of Lyons Gulch', 'William Dougherty's Spring', 'Frank Lord's residence' and 'Charles Frank's Ranch'. All of these are presumed to be well-known natural objects or permanent monuments until the contrary appears. (*Hammer* v. *Garfield Mining & Mill. Co.,* 130 U. S. 291, 299 [9 Sup. Ct. 548, 32 L. Ed. 964].) Notices of location are to be *liberally construed.* (*McCann* v. *McMillan,* 129 Cal. 350 [62 Pac. 31]; *Carter* v. *Bacigalupi,* 83 Cal. 187 [23 Pac. 361]; *Mitchell* v. *Hutchinson,* 142 Cal. 404 [76 Pac. 55].) At 40 Corpus Juris, page 805, it is said in referring to the sufficiency of the location notice: 'If it is made in good faith, it should receive a liberal and reasonable construction in favor of the locator; and if by such construction the language employed in describing the claim, *when taken in connection with the markings on the ground* and other surrounding circumstances, will enable a reasonably intelligent person to find the claim, and trace its boundaries, and therefore imparts notice thereof to subsequent locators, it is sufficient.'" (Emphasis added.)

Furthermore, the question whether the location of a mining claim as designated by boundaries marked on the ground is clearly ascertainable, is properly a question of fact for the trial court. (McKinney's Digest, vol. 16, p. 192; *McCarthy* v. *Phelan,* 132 Cal. 404 [64 Pac. 570]; *Huckaby* v. *Northam,* 68 Cal. App. 83 [228 Pac. 717]; *Hammer* v.

*Garfield Mining Co.,* 130 U. S. 291 [9 Sup. Ct. 548, 32 L. Ed. 964].) And where, as in the instant case, the evidence relating thereto is conflicting, so, also, for the determination of the trial court is the question with respect to the accuracy and sufficiency of the ''natural object'' (here designated in the location notices to be ''Chalfant Station'') as constituting an adequate compliance with the statutory provisions, which require that the claims be described in the notices by reference to a permanent monument.

█ But it is well-settled law that in an action to quiet title plaintiff cannot prevail because of the weakness of the title of the defendant therein, but that plaintiff's success in such an action must depend upon the strength of his own title. In other words, plaintiff must establish clear title in himself before he may be permitted to prevail because of alleged possible defects in the title of his adversary. Thus in the case entitled *McInerny* v. *Allebrand,* 107 Cal. App. 457, 467 [290 Pac. 530], it was said: ''The rule is well established in California that in a possessory action of this character, the plaintiff must rely upon the strength of his own title rather than upon the weakness of that of his adversary. . . . *Weed* v. *Snook,* 144 Cal. 439 [77 Pac. 1023]; *Reay* v. *Butler,* 95 Cal. 206 [30 Pac. 308]; *Schroder* v. *Aden Gold Min. Co.,* 144 Cal. 628 [78 Pac. 20]''. And in the Schroder case, last cited, it was said: ''It is also urged that there was no evidence that the locators of defendant's claims marked the boundaries thereof by monuments. These are matters which do not concern the plaintiffs. When it has been determined that they [plaintiffs] have no interest in the land in controversy the case is ended. This is in the nature of a suit to quiet title, and in such a case the plaintiff must obtain judgment upon the strength of his own title, and if it be shown that he has no title, it becomes immaterial to inquire into defendant's rights. . . . The want of title in plaintiff renders it unnecessary to examine the title of defendant. (*City and County of San Francisco* v. *Ellis,* 54 Cal. 72; *McGrath* v. *Wallace,* 116 Cal. 548 [48 Pac. 719].)'' To the same effect is the case of *Nobel* v. *You Bet Mining Co.,* 22 Cal. App. (2d) 623, 627 [72 Pac. (2d) 205].

█ It follows that if the specific finding of the trial court—to the effect that it was not true that on or about the 11th day of March, 1935, the plaintiffs made a valid location

or locations on the lands in question—is supported by substantial evidence either to the effect that the attempted location by the plaintiffs was not made in accordance with the provisions of the statute, or that at such time the lands legally were not open to location by the plaintiffs, none of the several objections which are presented by the appellants may be sustained.

Appellants contended that on March 11, 1935, they "laid out" the Early Dawn group of claims, using a tape and compass; that they marked the discovery points, placed location notices on, and put up corner markers for, each claim; that on a day soon thereafter, accompanied by a mining engineer, they did certain other location work on the claims. The latter testified that on the day last mentioned he and the two plaintiffs checked the lines for each of the claims, chained from corner to corner, and put up corner monuments on each claim; that the monuments were made of rock, four or more feet in height, and that all the work just described was done in a single day, beginning at about 5 o'clock in the morning and ending some time between 2 and 3 o'clock in the afternoon of that day. On the other hand, the defendant Joe Smith testified that when he located *one* of the claims (the "Florence Extension") on June 6, 1933, "it took us [himself and another man, or boy] a good three days to monument that claim. . . . " The testimony showed that the land on which the mines were located was very precipitous, there being in places a rise of 2,000 feet in altitude from the lower to the upper end of the several claims. The testimony of another witness for the defendants was to the effect that, in the early part of 1935, in his capacity as sheepherder he was in a position to note the approach of any person who might go upon the properties whereon the claims were located, and that during the period from about February 22 until May 22, 1935, he saw no one "making locations" in that vicinity, nor did he see "any monuments there". Defendant Joe Smith further testified that he was on the claims during the latter part of March, 1935, at which time he saw no new monuments, and that when he was on the land on or about July 1, 1935, he saw none which had been erected by the plaintiffs. The son of the defendants Joe and Florence Smith also testified that on July 18, 1935, he was on the claims known as Florence, Florence Extension, Ella and White

Cloud, and that although he made a search for monuments or location notices at that time, he found none other than those monuments which theretofore had been placed on the claims by his father.

Since it is well-established law that where the evidence is conflicting a decision reached thereon either by a court or by a jury is conclusive on an appellate tribunal, it follows that none of appellants' several contentions with regard to the insufficiency of the evidence to sustain the findings may be upheld. However, notwithstanding such conclusion, appellants contend that the finding of fact, which was reiterated in the judgment, to the effect that prior to the pretended location by plaintiffs of the claims here in dispute each of such claims had been legally located theretofore by the defendants Joe B. Smith and Florence Smith, was not supported by the evidence; also, the same objection was made with regard to the findings that the said defendants had performed the required assessment work on each of said claims for the year ending July 1, 1934, and that at the time when plaintiffs attempted to locate them the lands were not ''unappropriated public domain''. However, the evidence discloses beyond the possibility of question that, prior to the date when the plaintiffs attempted to make their location of the several claims, the defendants in good faith not only had made location of each of said claims by monumenting them, marking the boundaries thereof on the ground, placing the required notices of their locations within the monuments, recording the several notices of location, and performing the required annual assessment work by constructing roads, a cabin, a mill and tunnels on the property, but also had actually operated the property as a mine or mines,—all of which facts were personally and well known to the plaintiffs. It is well settled that under such circumstances the land would not become open to relocation by another unless and until defendants failed to perform the necessary yearly assessment work. (*Von Gal-Scale* v. *Cottrell*, 2 Cal. App. (2d) 29 [37 Pac. (2d) 715]; *Calico-Odessa Min. Co.* v. *Britt*, 135 Cal. App. 744 [27 Pac. (2d) 778].)

In the case entitled *Moodey* v. *Dale Consol. Mines*, (C. C. A. 9th Cir.) 81 Fed. (2d) 794, 797, the rules governing the right to relocate a mining claim are aptly set forth, as follows:

" . . . A forfeiture of a mining claim cannot be established except upon clear and convincing proof of the failure of the locators or owners of the claim to have the work done or improvements made to the amount required by law. *Hammer* v. *Garfield* [*Mining and*] *Milling Co.,* 130 U. S. [291] 292, 9 S. Ct. 548 [32 L. Ed. 964]." Again, at page 796, the same court said: " 'Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim, and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done.' . . . " (See, also, *Lind* v. *Baker,* 31 Cal. App. (2d) 631, 637 [88 Pac. (2d) 777].)

Therefore, in view of the evidence of a valid prior location by defendants, assertions made by appellants such as those to the effect that some of the notices of location were defective—in that the property was incorrectly or inadequately described therein—should not be permitted to prevail against the facts hereinbefore set forth. Besides, as hereinbefore stated, the judgment of the trial court did not provide for the quieting of title in the defendants. Neither of the parties to the action was granted any relief in that regard; and it is clear that the plaintiffs were entitled to no judgment for damages.

Appellants register further objections to the judgment to the effect that on the trial of the action the trial court erred in the admission of certain evidence offered by the defendants. Such objections related generally either to the order of "proof" or to evidence which in no way could have affected the decision that was reached by the trial court.

No miscarriage of justice resulted from the judgment from which the appeal was taken.

The judgment is affirmed.