[Civ. No. 4159.   Fourth Dist.   Jan. 26, 1951.]

GUY B. DeVALL, Appellant, v. JANE F. DeVALL, Respondent.

Guy B. DeVall, in pro. per., for Appellant.

Osborne, Solomon & Fitts for Respondent.

GRIFFIN, J.—Plaintiff and appellant Guy B. DeVall filed this action for divorce on the ground of extreme cruelty and alleged certain property to be community property. His wife, Jane F. DeVall, appeared and by way of cross-complaint charged appellant with extreme cruelty and asked for custody of the three minor children, alimony, and an award of the community property. She alleged the property described by appellant to be her separate property. The trial court found in favor of respondent and cross-complainant on the main issues, awarded her custody of the children and allowed, as "alimony in gross" the sum of $5,500 "to be a lien upon" the Laguna Beach property, title to which is held by the parties as tenants in common, and in addition ordered monthly payments of $200 for support of the children. This latter amount, together with the sum of $400, theretofore ordered paid as alimony pendente lite, were declared to be a lien upon the Sunset Boulevard property, title to which was similarly held by the parties. In addition, the court ordered appellant to pay $320 storage charges on certain furniture. The court then found to be community property certain personal property and divided it proportionately between the parties. It then found that the interest of each party in the real property described was the separate property of each and that the wife had insufficient funds to support herself and children. An interlocutory decree of divorce was entered accordingly on July 20, 1948. On a motion for new trial appellant claimed that during their married life he had given his wife large sums of money, approximately $100,000, and that when she testified at the trial that she presently had no money, she wilfully deceived the court. The motion for new trial was granted in part, with the limitation that further

evidence was to be received only on the question of the amount of money claimed to have been paid by the appellant to his wife during the period in question, and as to her disposition of that money, and for the purpose of reconsidering the question of attorneys' fees for counsel for the respondent.

Further evidence was received on the limited question and after a full hearing the court, on October 14, 1949, signed a written order or "Judgment on the New Trial," that the previous interlocutory decree entered therein remain in effect, and it therein fixed attorneys' fees for the wife at $1,000 and signed findings accordingly. No appeal was taken from the interlocutory decree of divorce originally entered. On October 14, 1949, the court, on its own motion, granted a final decree of divorce to the wife dissolving the bonds of matrimony and therein ordered that the provisions of the interlocutory decree as to alimony, custody and support of the minor children be held binding on the husband, "as if herein set forth in full." On October 21, 1949, the husband filed a notice of appeal from the "judgment . . . entered . . . on October 14, 1949." On October 25, he filed another notice of appeal from the judgment entered on October 17, 1949. And on October 25, he filed another notice of appeal from the judgment entered on October 17, 1949. Separate filing fees were paid on each occasion. The record does not disclose the date of entry of these several orders or judgments. We will assume that the notice of appeal covered the judgment and order entered on the new trial and the final decree of divorce. The appeal is based on the clerk's transcript, the reporter's transcript of the proceedings had on the motion for new trial, and the exhibits filed in such proceedings.

Several attorneys represented Mr. DeVall at different intervals during the proceedings. Appellant appeared in propria persona in this court and personally argued the claimed merits of this appeal.

█ His first contention is that the trial court erred in entering the final decree of divorce prior to the ultimate disposition of the proceedings on the motion for new trial and prior to the expiration of the time for appeal from the judgment entered thereon.

In reply to this contention respondent argues that since the trial judge ordered that its ruling on the new trial made the provisions of the interlocutory decree of divorce effective from the date of its entry, and that since appellant did not appeal from the interlocutory decree, he is barred from at-

tacking it, and that the court properly entered a final decree based thereon. We see no merit to respondent's argument. Section 132 of the Civil Code provides in part that when one year has expired after the entry of such interlocutory judgment, the court may enter the final judgment granting the divorce, but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed.

A similar question was thoroughly discussed in *Cory* v. *Cory,* 71 Cal.App.2d 309 [162 P.2d 497], and after citing decisions bearing thereon, the court held that the final decree must be reversed on appeal if such decree was made and entered prior to the disposition of an appeal from an order granting the interlocutory judgment. In effect, the interlocutory decree in the instant action, pertaining to the disposition of the property and the order for payment of alimony, was set aside by the limited order granting the motion for a new trial. The endeavor to make the order entered, as a result of the hearing on the new trial, effective as of the date of the signing of the interlocutory decree, was unauthorized. As may be noted, the interlocutory decree was entered on July 20, 1948, and it was not until October 14, 1949, that the trial court entered its judgment on the new trial. If respondent's argument were correct, the time for appeal from the interlocutory judgment, in this respect, would have expired. The only means by which the provisions of the interlocutory decree pertaining to the property rights could be attacked would be by appeal from the order or judgment made on the new trial which directly involved those provisions of the interlocutory decree. The conclusion reached in *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522], and *Ritter* v. *Ritter,* 103 Cal.App. 583 [284 P. 950], in reference to section 132 of the Civil Code is applicable here. There it was held that the entry of a final decree of divorce while an appeal was pending from a portion of the interlocutory judgment was improper. We therefore conclude that the entry of the final decree in the instant action was premature and improper. ▮ The proper procedure in respect to the final decree and its appropriate provisions, *after the questions pending on appeal have been finally determined,* is pointed out in *Newell* v. *Superior Court,* 27 Cal.App. 343 [149 P. 998], i. e., that if the portion of the interlocutory decree determining the property

rights of the parties is fully affirmed on appeal, upon entering its final decree the trial court should dispose of the property according to the determination finally expressed in the interlocutory decree.

■ It is next argued that the findings of fact, conclusions of law, and the decrees herein made, are fatally defective for failing to specify therein the acts or conduct constituting the alleged cruelty established at the trial in the first hearing. This question was not before the court for consideration under the limited order granting a new trial. (*Karallis* v. *Shenas,* 97 Cal.App.2d 280 [217 P.2d 436].)    See, also, *LaMar* v. *LaMar,* 30 Cal.2d 898, 900 [186 P.2d 678].

■ Grouping other contentions, they involve the claim that the evidence received on the new trial hearing conclusively shows: (1) that respondent received large sums of money for the benefit of the community for which she failed to account; (2) that the evidence conclusively shows appellant's inability to pay the alimony and support money awarded; (3) that the evidence shows respondent was able to contribute to her own support; (4) that the court failed to consider the joint liability of each for certain taxes imposed; (5) that the court was without power to compel appellant to pay the storage bill on the community furniture; and (6) that the provisions of the interlocutory decree, as reimposed by the order on the new trial, in respect to the support of the children, were oppressive.

Without setting it forth in detail, suffice it to say, the evidence introduced on the subjects permitted to be considered or discussed, and which is partially disclosed under the next proposition, was sufficient to support the findings in respect thereto.    It is apparent that some of these contentions were not permitted to be raised under the limited order under consideration. (*G. Ganahl Lumber Co.* v. *Weinsveig,* 168 Cal. 664, 667 [143 P. 1025]; *Deyoe* v. *Superior Court,* 140 Cal. 476, 486 [74 P. 28, 98 Am.St.Rep. 73]; *Bauer* v. *Bauer,* 81 Cal.App. 414, 416 [253 P. 969]; *Bohnert* v. *Bohnert,* 91 Cal. 428 [27 P. 732]; *Robinson* v. *Robinson,* 79 Cal. 511 [21 P. 1095].)

The last proposition is whether the court erred in decreeing that appellant pay respondent's attorney's fees amounting to $1,000.    The argument is that the award was based on past services and not on prospective services to be rendered pendente lite.    The further objection is advanced that the evidence conclusively shows that the wife had control of

sufficient property to pay her own attorney's fees. In support of these propositions he cites such authorities as *Warner* v. *Warner*, 34 Cal.2d 838 [215 P.2d 20]; section 137 Civil Code; and 1 California Jurisprudence, page 989, section 43.

It appears from the record, as augmented by order of this court, that there was an original application for attorney's fees, costs and alimony pendente lite made by respondent; that after hearing, on October 18, 1946, the trial court made its order that plaintiff pay defendant "$200 on account of attorneys' fees—payable within 30 days hereof and balance, if any, pursuant to determination at time of trial." The record also shows that the trial court granted appellant's motion for new trial in part and included therein the further right to consider the issue of whether additional attorney's fees should be allowed. As a part of the order, based on the new trial proceedings, the court awarded defendant $1,000, which amount, we assume, was the balance suggested in the first order granting attorney's fees "pendente lite." Under these facts the instant case would be removed from the application of the rule stated in the authorities cited by plaintiff. (*Hunsberger* v. *Hunsberger*, 99 Cal.App. 130 [277 P. 1092]; *Thomas* v. *Thomas*, 66 Cal.App.2d 818 [153 P.2d 389]; *Rose* v. *Rose*, 109 Cal. 544 [42 P. 452]; *Schluter* v. *Schluter*, 130 Cal.App. 780 [20 P.2d 723]; *Wood* v. *Wood*, 126 Cal.App. 237 [14 P.2d 584]; *Farrar* v. *Farrar*, 41 Cal.App. 452, 456 [182 P. 989]; *Newlands* v. *Superior Court*, 171 Cal. 741 [154 P. 829].)

The fixing of attorneys' fees and the wife's expenses of suit is largely within the discretion of the trial court and only a plain abuse of that discretion is subject to correction by an appellate court. (*Stewart* v. *Stewart*, 156 Cal. 651 [105 P. 955].) The evidence shows that the home on Sunset Boulevard in which appellant was living, had an estimated value of $35,000. In addition to other properties appellant was awarded the photography business, which comprised several studios, and from which he obtained his main income. Respondent testified at the last hearing that the only money she then had was $12. Appellant testified that he had earned from the business and turned over to respondent a sum in excess of $125,000 during the war period. Mrs. DeVall denies that she received that sum for herself but only received from him a stipend of about $250 per month for living expenses. Appellant also testified that he had expended on his own behalf, over $5,000 in the employment of attorneys. Under

such circumstances, it cannot be said that an allowance of $1,000 for the services of respondent's attorney was unreasonable. Expert accountants, who were employed to audit the books, testified to the receipt of many thousands of dollars by the parties hereto from the business operated by them and that considerable sums were expended by way of expenses. There was no direct evidence that the wife retained any portion of those sums for herself. Counsel for respondent received $200 on account of attorney's fees "pendente lite" and, according to his statement, he spent $135 in excess of that amount as costs. The record on appeal is quite voluminous and indicates the necessity of more than usual court appearances in the trial court, office consultations, and labor in defending the several proceedings instituted by appellant. Under the evidence and circumstances presented it cannot be said that the court abused its discretion in fixing the balance of attorney's fees at $1,000. (*Rose* v. *Rose,* 109 Cal. 544 [42 P. 452]; *Westphal* v. *Westphal,* 122 Cal.App. 388 [10 P.2d 122]; *Smith* v. *Smith,* 94 Cal.App. 172 [270 P. 995]; *Bastjan* v. *Bastjan,* 215 Cal. 662 [12 P.2d 627]; *Busch* v. *Busch,* 99 Cal.App. 198 [278 P. 456]; *Loeb* v. *Loeb,* 84 Cal. App.2d 141 [190 P.2d 246]; *Gebhardt* v. *Gebhardt,* 69 Cal. App.2d 723 [160 P.2d 177]; *Heck* v. *Heck,* 63 Cal.App.2d 470 [147 P.2d 110]; *Smith* v. *Smith,* 85 Cal.App.2d 428 [193 P.2d 56].)

The final decree of divorce is reversed. The order based on new trial proceedings, including the order for payment of additional attorney's fees, is affirmed. Respondent to recover costs on appeal.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1951.