[Sac. No. 6317.   In Bank.   June 15, 1954.]

ELLA E. HARROLD, Plaintiff and Appellant, v. ELLS-
WORTH HARROLD, Defendant and Appellant.

David Livingston and Louis F. DiResta for Plaintiff and Appellant.

Devlin, Diepenbrock & Wulff and A. I. Diepenbrock for Defendant and Appellant.

SHENK, J.—In this action for divorce a decree was entered of date November 1, 1951, purporting to conform to the direction of the District Court of Appeal on a former appeal by the plaintiff from certain financial provisions of the interlocutory decree.

Plaintiff and defendant were married on November 26, 1936. They separated for the first time in the fall of 1944. In June, 1945, they entered into a separation agreement which purported to settle all present and future property rights arising out of the marital relationship. In September, 1945, they became reconciled but in March, 1948, again separated. Thereafter the plaintiff commenced the present action for divorce, charging extreme cruelty. The interlocutory decree was entered on February 15, 1949. By that decree the trial court found and concluded that by reason of their reconciliation, the parties had abandoned the executory provisions of the separation agreement. It made an award of $400 a month for five years for the support and maintenance of the plaintiff. It divided the community property equally between

the parties. The plaintiff appealed from the financial provisions of the judgment and only from that portion thereof denying her the full relief demanded. The defendant did not appeal. The District Court of Appeal held that in an action for divorce on the ground of extreme cruelty the nonoffending party is entitled to more than one-half of the community property, citing *Tipton* v. *Tipton,* 209 Cal. 443 [288 P. 65], and that the trial court should have considered the earnings of the defendant accruing prior to the entry of the final decree in determining the community estate. (*Harrold* v. *Harrold,* 100 Cal.App.2d 601 [224 P.2d 66].) The pertinent portions of the judgment of the District Court of Appeal are on page 609 and are as follows: ". . . the interlocutory judgment is affirmed, except . . . as to that portion relating to a division of the community estate, which is remanded to the trial court with instructions to determine the division of the amount of the community estate as indicated herein. . . ."

Before retrial the parties stipulated that the accounting should cover a period from July 31, 1948, to three months prior to the date of the final decree. From findings made following the retrial the court concluded and ordered that the final degree be entered on November 1, 1951, and that the accounting period should terminate on August 1, 1951. It found that during this period the sum of $89,904 accrued to the community; that $88,224 remained in the community estate, and ordered that the defendant pay to the plaintiff $45,112 as her share. By this division she was awarded 51.13 per cent of the total estate in full settlement of her community property interest.

The plaintiff's appeal is from that part of the judgment "which specified that the plaintiff shall have and receive from the defendant the sum of $45,112.00." She makes ten contentions. Six relate to the court's determination of the amount allocable to community earnings out of the defendant's total income. These contentions will be disposed of before consideration of the others.

The community estate is made up of the defendant's earnings from two automobile enterprises which were the defendant's separate property. Other income from these businesses was determined to be a return on the investment of his separate capital. Numerous exhibits consisting of the defendant's books, records and income tax returns were introduced in evidence, and it is apparent that the court's findings were based to a large extent upon these exhibits. The plain-

tiffs seeks to show that the defendant's earnings as contrasted with the return from his investment in these businesses were far greater than found by the court.

The rule of law applicable to the allocation to the community estate under these circumstances is stated in *Huber* v. *Huber*, 27 Cal.2d 784, at page 792 [167 P.2d 708] as follows: "In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment. (*Estate of Gold*, 170 Cal. 621 [151 P. 12]; *Witaschek* v. *Witaschek*, 56 Cal.App.2d 277 [132 P.2d 600]; 3 Cal.Jur. 10-Yr.Supp., Community Property, § 46.)"

During the accounting period the defendant received from one of his enterprises, the Northern Motor Company, a salary of $1,000 per month for a period of nine months, after which the company ceased doing business and was dissolved. The defendant received from his other business, the Ellsworth Harrold Company, a salary of $2,000 a month until June 15, 1950, and thereafter until the end of the accounting period $2,200 a month. In addition he received a bonus of $11,374 for 1950 and $1,430 for attendance at various corporate directors' meetings. These earnings totaled $89,904, all of which the court found to be community property.

The profits of the Ellsworth Harrold Company varied from approximately $100,000 to $135,000 during the accounting period. It produced practically all of the defendant's income other than his community earnings. There is substantial evidence to the effect that the company owes its prosperity in a large part to a Ford dealer's franchise; that this business is staffed with competent administrative personnel; that the defendant does not take an active part in its routine operations; that he frequently absents himself on personal matters, and that he is primarily concerned with policy matters in the operation of the business. The defendant is virtually the sole owner of the company, and is in a position where he can allocate a greater salary to himself if he chooses to do so. The plaintiff contends that "the court cannot accept as conclusive the arbitrary determination by Harrold as to the amount of his salary." She urges the consideration of evidence at variance with that above indicated. But it is sufficient if the trial court has duly considered the divergent factual situations and has been impressed by the evidence

more favorable to the defendant. This evidence is substantial and the finding based thereon that $89,904 is allocable to personal earnings by virtue of the defendant's efforts should not be disturbed on appeal. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183].)

On the prior appeal the District Court of Appeal held that the defendant's salaries fairly represented his contribution to income of his businesses. It stated at pages 607 and 608: ''We are convinced from our examination of the record that the trial court conscientiously endeavored to follow the rule as enunciated in the Huber case and to make an equitable allocation of personal income and community earnings as was warranted under the particular facts and circumstances disclosed in the present case.'' The quoted language served as a guide to the trial court in the present proceedings. The allocation to average annual community earnings, including bonuses, during the present accounting period is greater than in the prior proceedings, although the overall average income of the defendant's businesses had decreased. In these circumstances, the above quoted language is equally applicable to this appeal.

The plaintiff's seventh contention is that she is entitled to interest on her share of the community property accumulating during the accounting period. By this contention she does not seek to recover her share of interest earned from an investment of community property. (See Civ. Code, §§ 164, 687.) It does not appear that the community funds here involved were invested or earned any interest or increment. The recovery sought is based upon the defendant's control and use of the plaintiff's ''present, existing and equal'' interest in the community property as it is accumulated. (See Civ. Code, § 161a.) While the defendant had the community funds in his possession he did so by virtue of the power given him to manage and control such property for the benefit of the community. (Civ. Code, §§ 161a, 172 and 172a.) ██ When a divorce is pending the power of a husband over the community property exists until the entry of a final decree. (*Lord* v. *Hough,* 43 Cal. 581; *Chance* v. *Kobsted,* 66 Cal.App. 434, 437 [226 P. 632]; *In re Cummings,* 84 F.Supp. 65, 69.)

██ Interest is defined in section 1915 of the Civil Code as ''the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money.'' It is apparent that the defendant was not using the money of the

plaintiff within the meaning of that section and she is not entitled to interest thereon.

The plaintiff's eighth contention is that since she was awarded the divorce on grounds of extreme cruelty she should be awarded substantially more than one-half of the community property under the mandate of the decision in the prior appeal. Civil Code, section 146, provides in part: ". . . One. If the decree is rendered on the ground of adultery, incurable insanity or extreme cruelty, the community property shall be assigned to the respective parties in such proportions as the court, from all the facts of the case, and the condition of the parties may deem just." In all other cases the community property must be divided equally between the parties. (Civ. Code, *supra*, § 146, subd. Two.) It is stated in the opinion of the court on the prior appeal, at page 608: "The inference derived from this code section is that the nonoffending party is entitled to more than one-half of the community property where the divorce is granted on the ground of extreme cruelty. (*Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65]. . . .)" In support of her argument that she properly should be awarded "substantially" more than one-half of the community property, the plaintiff relies on a statement in *Quagelli* v. *Quagelli* (1929), 99 Cal.App. 172, at page 176 [277 P. 1089]: ". . . in all cases the uniform rule has been that where the decree is on the ground of extreme cruelty the award to the unoffending spouse must be substantially greater than that to the one who is at fault." The plaintiff asserts that the 51.13 per cent awarded her is not "substantially greater" than the 48.87 per cent retained by the defendant.

In *Gorman* v. *Gorman*, 134 Cal. 378 [66 P. 313], it was held that though section 146 impliedly requires that more than half of the community property be awarded to the innocent party, it does not otherwise limit the discretion of the trial court in making the award; that the portion should depend upon the particular circumstances of each case, and that this court would be slow to interfere with an exercise of legal discretion by the trial court. (See also *Crouch* v. *Crouch* (1944), 63 Cal.App.2d 747, 756 [147 P.2d 678].) The Quagelli case, *supra*, upon which the plaintiff relies, recognizes the foregoing principle in the following language at page 176: "What the difference should be depends upon the circumstances of each case, and that is a matter to be determined by the trial court in the first instance. . . ." ▪ It cannot be said as a matter of law that the award to the plaintiff in the present

case is not in compliance with statutory provisions, nor that an examination of the record reveals an abuse of discretion in apportioning the community estate.

The plaintiff's final contentions are that under the mandate on the prior appeal the trial court erred in not entering a new interlocutory decree, and in entering the final decree on November 1, 1951. More than two years and ten months elapsed between the interlocutory decree and the entry of the final decree by the trial court. Section 132 of the Civil Code states in part: "When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce . . ., but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed."

█ It appears that the provisions of section 132 are as applicable whether the appeal is a limited one or an appeal from the whole of the judgment. In *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522], the plaintiff appealed only from that portion of the interlocutory decree determining the property rights of the parties. While the appeal was pending a "final decree" of divorce was entered by the trial court. The court held the entry to be improper and stated at page 494: "Section 132 of the Civil Code prohibits the entry of a final decree of divorce 'if *any* appeal is taken [and pending] from the interlocutory judgment.' This section has been held to preclude the entry of a final decree though the appeal be only from that portion of the interlocutory decree determining the property rights of the parties." (See also *Cory* v. *Cory,* 71 Cal.App.2d 309 [162 P.2d 497]; *Ritter* v. *Ritter,* 103 Cal. App. 583 [284 P. 950]; *Newell* v. *Superior Court,* 27 Cal. App. 343 [149 P. 998].)

Section 132, as interpreted by the Webster and other cases, provides that the final decree cannot be entered at certain designated times but it does not specify when it may be entered following a reversal on appeal. Here it was entered on the same day as the judgment on retrial of the designated financial issues. Neither section 132 nor the cases construing it expressly prohibit the entry at that time. The question is whether the Legislature intended by implication or otherwise to delay the entry of the final judgment beyond such a time, when it enacted the section. The determination of this

question requires an investigation into the purpose and reason for providing a period of delay between the entry of the initial and the final decrees in divorce actions in this state.

The entry of an interlocutory decree prior to the entry of a final decree of divorce was first provided for in 1903 (Stats. 1903, pp. 75, 76) by adding sections 131 and 132 to the Civil Code. Two years later, in *Grannis* v. *Superior Court,* 146 Cal. 245 [79 P. 891, 106 Am.St.Rep. 23], this court at some length assigned reasons for the addition of the new sections. (See also *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880] ; *Deyoe* v. *Superior Court,* 140 Cal. 476 [74 P. 28, 98 Am.St.Rep. 73].) It appears from those early cases that the purpose of the 1903 legislation was based upon a policy of the state which does not favor a hasty dissolution of the bonds of matrimony, not from the standpoint of property considerations affected by the marriage, but from the standpoint of past and future personal relationships. In later cases the following language appears: " 'The provision contained in section 132 of the Civil Code, . . . was adopted in recognition of the fact that in granting a divorce the court has a variety of duties to perform affecting the property rights of the parties and the future welfare of those parties and their children; and it was deemed advisable that in such cases all of those matters, as far as possible, should be finally adjusted in connection with the granting of a divorce.' " (*Webster* v. *Webster, supra,* 216 Cal. 485, 494, quoting from *Newell* v. *Superior Court,* 27 Cal.App. 343, 345 [149 P. 998].)

It is to be noted that in both the Webster and the Newell cases a final decree was entered during the pendency of an appeal from an interlocutory judgment, and the entry of a final judgment at that time was prohibited by the clear language of section 132. We are not concerned in the present case with an appeal from the interlocutory decree as such. That decree, insofar as it ordered the dissolution of the bonds of matrimony, was affirmed and became the law of the case. Any question in connection therewith was and is no longer open, including the right to the final decree as affected by property matters. Such matters, involving items of the additional accounting period and the pro rata division of the community property, were adjudicated on the subsequent hearing as directed by the District Court of Appeal. This appeal from that adjudication does not in any proper sense constitute an appeal as contemplated by the Legislature in

enacting section 132 such as would stay the entry of the final decree, since none of the stated purposes of such a stay are here applicable. (See *Webster* v. *Webster, supra,* 216 Cal. 485, 494; *Pereira* v. *Pereira, supra,* 156 Cal. 1, 9; *Grannis* v. *Superior Court, supra,* 146 Cal. 245, 248.)

From the foregoing it is apparent that there is no sufficient reason why the trial court should delay the entry of the final decree beyond the express prohibitions of section 132. Furthermore there appears to be good reason for its entry at the time of judgment in the accounting determination. If, as the plaintiff seeks to accomplish, the prohibitions of section 132 are applied to the present appeal in the same manner as to the interlocutory decree heretofore affirmed, the final decree could not be entered until any appeal taken herefrom had been determined or the time for appeal had expired. On this theory an appeal would extend the period during which the defendant's earnings might accumulate to the community and, even though the judgment be affirmed, would necessitate another accounting by the trial court of the community estate accumulating since the close of the previous accounting period and during the time the appeal was pending. By appealing again and again from such judgments the plaintiff might extend her marital status indefinitely for the purpose of sharing in the earnings of the defendant. In the present case there have been two appeals and more than five years have elapsed since the entry of the interlocutory decree. There is nothing in section 132 of the Civil Code, nor in the cases dealing with the problem, which indicates that under the circumstances here presented a new interlocutory decree should be entered.

Our attention has been directed to the decision in *DeVall* v. *DeVall,* 102 Cal.App.2d 53 [226 P.2d 605]. The judgment there granted an interlocutory decree of divorce and thereafter a new trial was ordered on the defendant's motion. The second trial was limited to the consideration of a question involving the division of community property. At the termination thereof the court signed an order to the effect that the previous interlocutory decree remain in effect. On the same day the court, on its own motion, granted the final decree of divorce, more than a year having elapsed since the entry of the original interlocutory decree. On appeal it was held that the entry of the final decree before the expiration of the time for appeal from the second judgment was improper. The essential factual difference in the present case is that here

there has been an affirmance of the interlocutory decree severing the marital relationship, whereas in the DeVall case there was an interlocutory decree still appealable at the time the final decree was entered.

The defendant's sole contention on his appeal is that he had legitimate and substantial expenses which should have been deducted from the total community estate before a °division was made. These expenses include alimony, court costs and counsel fees awarded to the plaintiff, and all sorts of personal expenses. The trial court found that the defendant was not entitled to an offset for personal expenses since no such allowance was made to the plaintiff, and that there would be no difference in the final result if there had been a monthly division of the community income to offset current expenses or a single division of total community income during the accounting period. ▆ When a divorce is granted on the ground of extreme cruelty the trial court has a wide discretion in the allowance of expenses and costs as well as in the division of community property within established rules. It cannot be said on the record here presented that this discretion has been abused.

The judgment is affirmed.

Carter, J., and Spence, J., concurred.

TRAYNOR, J.—I concur.

I agree with the holding in the majority opinion that the trial court properly entered a final decree of divorce, but am of the opinion that in reaching this result we should overrule *Webster* v. *Webster*, 216 Cal. 485, 487 [14 P.2d 522]. In the Webster case, as in the present one, the appeal was only from the part of the interlocutory decree dividing the community property. The majority opinion distinguishes the Webster case on the ground that there the final decree of divorce was entered during the pendency of an appeal from the interlocutory decree, whereas in the present case the final decree was entered after a judgment on retrial following an order of the District Court of Appeal stating that "the interlocutory judgment is affirmed, except . . . as to that portion relating to a division of the community estate. . . ." (*Harrold* v. *Harrold*, 101 Cal.App.2d 601, 609 [224 P.2d 66].) The majority opinion states that this order affirmed the part of the interlocutory decree dissolving the marriage and holds that an appeal from the order entered after the retrial of

the property issues is not such an appeal as will stay the entry of a final decree under section 132 of the Civil Code.

Since plaintiff's first appeal was from only that part of the interlocutory decree dividing the community property, the part of that decree dissolving the marriage was not before the District Court of Appeal for review. (*American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 216 [246 P.2d 935]; *G. Ganahl Lbr. Co.* v. *Weinsveig*, 168 Cal. 664, 667 [143 P. 1025]; *Whalen* v. *Smith*, 163 Cal. 360, 362 [125 P. 904, Ann. Cas. 1913E 1319].) It could not, therefore, affirm that part of the interlocutory decree, and its order reversed the only part of that decree that was before it for review. (*Ibid.*; *Denman* v. *Smith*, 14 Cal.2d 752, 755 [97 P.2d 451].) Following that reversal and a retrial of the issues, the trial court ordered a division of the community property. The present appeal is again from only that part of the judgment dividing the community property. The situation is the same as if the part of the interlocutory decree dividing the community property were appealed from for the first time. The fact that there was a prior appeal, a reversal, and a partial new trial cannot avoid the prohibitory effect of section 132, if that section was properly construed in the Webster case. Even if there were several appeals and parts of the interlocutory decree were actually affirmed, the word "any" in section 132, as interpreted in the Webster case, would prohibit the entry of a final decree of divorce, for under that case the final decree cannot be entered if an appeal from *any* part of the interlocutory decree is pending.

The majority opinion distinguishes *DeVall* v. *DeVall*, 102 Cal.App.2d 53 [226 P.2d 605], from the present case on the same ground it distinguishes the Webster case by saying that in the DeVall case there was an interlocutory decree still appealable at the time the final decree was entered, whereas in the present case the part of the interlocutory decree dissolving the marriage had been affirmed on the prior appeal. In the DeVall case a new trial on the issues relating to the division of the community property was granted after the entry of the interlocutory decree. At the conclusion of the new trial it was ordered that the previous interlocutory decree remain in effect, and on the same day, but more than one year after the entry of the original interlocutory decree, a final decree of divorce was entered. This final decree was reversed on appeal, on the authority of *Webster* v. *Webster, supra*; *Newell* v. *Superior Court*, 27 Cal.App. 343 [149 P.

998]; *Ritter* v. *Ritter*, 103 Cal.App. 583 [284 P. 950]; and *Cory* v. *Cory*, 71 Cal.App.2d 309 [162 P.2d 497]. Section 132 states that "if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, *nor then, if the motion has been granted or judgment reversed.*" (Italics added.) In the DeVall case the motion for a new trial was granted, and it was held on appeal, following the reasoning of the Webster case, that a final decree of divorce could not be entered until one year had elapsed from the time of entry of the judgment on new trial. In the present case the interlocutory decree was reversed on appeal, but the majority hold that a final decree of divorce can be entered before one year has elapsed from the entry of the judgment on retrial. This holding is irreconcilable with that in the DeVall case, and is inconsistent with the reasoning of the Webster case.

In my opinion the interpretation given section 132 in the Webster case was erroneous. Since section 132 is concerned solely with the dissolution of the marital relationship of the parties, it should be interpreted to mean that only when an appeal is taken from the provisions of the interlocutory decree dissolving the marriage is the entry of a final decree of divorce prohibited until that appeal is finally disposed of by affirmance or by retrial, or in case of another appeal by affirmance thereof. Furthermore, the principal reason given for the holding in the Webster case is not persuasive. In that case it was said " 'that in granting a divorce the court has a variety of duties to perform affecting the property rights of the parties' and the future welfare of those parties and their children; and it was deemed advisable [by the Legislature] that in such cases all of those matters, as far as possible, should be finally adjusted in connection with the granting of a divorce.' " (*Webster* v. *Webster*, 216 Cal. 485, 494 [14 P.2d 522].) There is no basis for this statement in either the statutes or other cases of this court. Neither alimony nor custody of children are "finally adjusted" at the time of granting a final decree of divorce; both can be modified at any time thereafter. (Civ. Code, §§ 138, 139.) Moreover the trial court is not required to divide the community property or decide the problem of custody at the time of the interlocutory decree, but can determine those matters in separate actions. (*Pereira* v. *Pereira*, 156 Cal. 1, 10 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880]; *Brown* v. *Brown*, 170

Cal. 1, 4 [147 P. 1168] ; *Elms* v. *Elms,* 4 Cal.2d 681, 685 [52 P.2d 223, 102 A.L.R. 811].) Even if the Legislature deemed it advisable that property rights and custody should be finally adjusted in the divorce action, that objective is defeated by the Webster rule. If the parties, or the court, foresee long litigation over those matters, they may leave them to be determined later or in separate actions to avoid prolonging indefinitely the dissolution of the marriage.

The only other reason given in support of the holding in the Webster case is that the Legislature favors the prolongation of the marriage. The Legislature, however, by the express terms of section 132 fixed the expiration of a one year period after the entry of the interlocutory decree as the time for the entry of the final decree of divorce in the absence of an appeal from the trial court's determination that a divorce should be granted. Section 132 also expresses a legislative policy favoring the restoration of the parties to the status of single persons and enabling them to remarry after the expiration of the one year period. As amply illustrated by the present case, the Webster rule permits the frustration of these policies by a litigious spouse's repeated appeals from the provisions of the interlocutory decree dividing the community property. In my opinion the obvious purpose of the appeal and new trial provision of section 132 is to prevent the dissolution of the marriage until the right thereto is finally settled. Once it is finally determined that a divorce is proper and the one year period has elapsed, the purpose of section 132 is fully accomplished.

The holding in the Webster case is also out of harmony with the general rules giving finality to severable parts of judgments not appealed from or not subject to a motion for a new trial. If a partial appeal is taken from a judgment in which the issues determined are severable, the parts not appealed from become final and are beyond the scope of review of the appellate court. (*American Enterprise, Inc.* v. *Van Winkle, supra,* 39 Cal.2d 210, 216; *G. Ganahl Lbr. Co.* v. *Weinsveig, supra,* 168 Cal. 664, 667; *Whalen* v. *Smith, supra,* 163 Cal. 360, 362.) If the part appealed from is reversed, and a new trial is had on the issues involved therein, the parts not appealed from are not affected. (*Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 505 [271 P. 898]; *Neill* v. *Five C Refining Co.,* 79 Cal.App.2d 191, 194 [179 P.2d 818].) Similarly, a new trial may be had on the issues

involved in a severable part of a judgment without affecting the other parts. (Code Civ. Proc., §§ 657, 662.)

Section 132 should be interpreted in the light of these general rules, and they should apply to judgments in divorce actions, for there are no persuasive reasons for assuming that section 132 establishes an exception to them. The reliance in the Webster case on the use of the word "any" in that section is not persuasive. In the light of the purpose of section 132 and the rules governing partial appeals, it means "any" appeal from the part of the interlocutory decree dissolving the marriage. Moreover, authority for appeals from interlocutory decrees in divorce actions is given in the same section of the Code of Civil Procedure that grants authority for appeals from judgments generally. (§ 963, subd. 2.) In divorce actions, the frequent appeals from the part of the interlocutory decree dividing the community property demonstrate that it is ordinarily severable from the part decreeing a dissolution of the marriage. (E.g., *Pereira* v. *Pereira, supra,* 156 Cal. 1, 10; *Elms* v. *Elms, supra,* 4 Cal.2d 681, 685; *Wilson* v. *Wilson,* 76 Cal.App.2d 119, 122 [172 P.2d 568].) As the majority opinion concedes, in the present case these issues are not so interwoven or interdependent that they cannot be considered independently of one another.

The Webster case should be overruled and the Newell, Cory, Ritter, and DeVall cases disapproved, and it should be held that a final decree of divorce can be entered at any time after the expiration of one year from the entry of the interlocutory decree, when, as here, there is no appeal from provisions of the interlocutory decree dissolving the marriage and the issues involved in an appeal from the provisions of the interlocutory decree dividing the property are severable from those involved in the dissolution of the marriage.

Schauer, J., concurred.

EDMONDS, J.—It may well be better social policy to allow the entry of a final decree of divorce when an appeal is pending from only the provisions of the interlocutory decree dealing with property rights. But the Legislature has stated in language too clear to be misunderstood that "if *any* appeal is taken from the interlocutory judgment" the final decree may not be entered until the appeal is finally disposed of. (Civ. Code, § 132 [emphasis added].) Consistently, the section has been so construed and applied for over 20 years.

(*Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522], and cases following that decision.)

It seems evident that the section is capable of abuse by a wife who may prolong the marriage status almost indefinitely by a series of appeals, and thus continue to enjoy a share in the husband's earnings. Justice Traynor would allow the final decree to be entered pending an appeal from the property parts of the interlocutory judgment, according to principles relating generally to partial appeals. Justice Shenk would allow that decree to be entered after an appeal has been taken and decided, although the result of the appeal has been to remand the cause for further proceedings. Both solutions ignore the specific mandate of section 132; both solutions to that extent amount to a judicially legislated repeal of the section.

It is fundamental that the courts should not substitute their standards of social policy for those of the Legislature. In the present situation, that body has clearly stated that there shall be no final decree until the final disposition of *any* appeal from the interlocutory judgment. If the social policy of the state should be to allow the parties to obtain a final judgment of divorce notwithstanding unsettled issues as to property rights, the remedy is for the Legislature to amend section 132 accordingly.

I would reverse the judgment insofar as it purports to direct the entry of a final judgment of divorce.